**Nos. 2014-1360, -1500**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT
_____

KERANOS, LLC,

*Plaintiff-Appellant*,

and

UNITED MODULE CORPORATION, PETER COURTURE,
J. NICHOLAS GROSS,

*Third Party Defendants*,

v.

SILICON STORAGE TECHNOLOGY, INC.,
FREESCALE SEMICONDUCTOR, INC., MICROCHIP TECHNOLOGY, INC.,
SAMSUNG SEMICONDUCTOR, INC., SAMSUNG ELECTRONICS CO. LTD.,
TAIWAN SEMICONDUCTOR MANUFACTURING CO., LTD.,
TSMC NORTH AMERICA,

*Defendants-Appellees*.

_____

KERANOS, LLC,

*Plaintiff-Appellant*,

v.

ANALOG DEVICES, INC., APPLE INC., INTERNATIONAL BUSINESS
MACHINES CORPORATION, INTEL CORPORATION, NATIONAL
SEMICONDUCTOR CORPORATION, NXP SEMICONDUCTORS USA, INC.,
TEXAS INSTRUMENTS, INC.,

*Defendants-Appellees*.

_____

Appeals from the United States District Court for the Eastern District of Texas in
Case Nos. 2:13-cv-00017-MHS-RSP, 2:13-cv-00018-MHS-RSP
_____

**CORRECTED NON-CONFIDENTIAL APPELLEES' RESPONSE BRIEF**
_____

Jeffrey D. Mills
  *Counsel of Record*
Bruce W. Slayden II
Brian C. Banner
KING & SPALDING LLP
401 Congress Ave., Suite 3200
Austin, TX   78701
Telephone: (512) 457-2027
Facsimile: (512) 457-2100
jmills@kslaw.com
bslayden@kslaw.com
bbanner@kslaw.com

Adam M. Conrad
KING & SPALDING LLP
100 N. Tryon St., Ste. 3900
Charlotte, NC  28202
Telephone:  (704) 503-2600
Facsimile:  (704) 503-2622
aconrad@kslaw.com

*Counsel for Defendants-Appellees Silicon Storage Technology, Inc., Microchip Technology Inc., Freescale Semiconductor, Inc., Samsung Semiconductor, Inc., Samsung Electronics Co. Ltd., Taiwan Semiconductor Manufacturing Co., Ltd., TSMC North America, Analog Devices, Inc., International Business Machines Corporation, Intel Corporation, National Semiconductor Corporation, NXP Semiconductors USA, Inc., and Texas Instruments, Inc.*

John R. Lane
  *Counsel of Record*
FISH & RICHARDSON P.C.
1221 McKinney St., Suite 2800
Houston, TX  77010
Telephone: (713) 654-5300
Facsimile: (713) 652-0109
jlane@fr.com

*Counsel for Defendant-Appellee Apple Inc.*

November 26, 2014

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

**CERTIFICATE OF INTEREST**

Counsel for Appellee Freescale Semiconductor, Inc. certifies the following:

1.    The full name of the party represented by me is Freescale Semiconductor, Inc.

2.    The name of the real party in interest represented by me is Freescale Semiconductor, Inc.

3.    Freescale Semiconductor, Inc. is a Delaware corporation with its principal executive offices in Austin, Texas. The parent of Freescale Semiconductor, Inc. is Freescale Semiconductor Holdings V, Inc. Freescale Semiconductor, Ltd., a Bermuda company, is the indirect parent of Freescale Semiconductor Holdings V, Inc. Approximately 35% of the outstanding common shares of Freescale Semiconductor, Ltd. are publicly traded on the New York Stock Exchange under the symbol "FSL." Freescale Holdings, L.P., a Cayman Islands partnership, owns the remainder of the common shares of Freescale Semiconductor, Ltd.

4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

> **King & Spalding LLP:** Jeffrey D. Mills, Bruce W. Slayden II, Adam M. Conrad, R. William Beard, Jr., Brian C. Banner, Amina S. Dammann, Paul J. Andre, Lisa Kobialka
>
> **Jones Day:** David L. Witcoff

This 26th Day of November, 2014

/s/ Jeffrey D. Mills
Jeffrey D. Mills

i

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

**CERTIFICATE OF INTEREST**

Counsel for Appellee Samsung Electronics Co., Ltd. certifies the following:

1.     The full name of the party represented by me is Samsung Electronics Co., Ltd.

2.     The name of the real party in interest represented by me is Samsung Electronics Co., Ltd.

3.     Samsung Electronics Co., Ltd. is a Korean corporation that is publicly traded on the Korean Stock Exchange. It has no parent corporation, and there are no other publicly-held corporations that own 10% or more of its stock.

4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

**King & Spalding LLP:** Jeffrey D. Mills, Bruce W. Slayden II, Adam M. Conrad, R. William Beard, Jr., Brian C. Banner, Amina S. Dammann, Paul J. Andre, Lisa Kobialka

**Covington & Burling LLP:** Robert D. Fram, Hankil D. Kang

**Steptoe & Johnson:** John M. Caracappa, Paul A. Gennari, Scott D. Watkins, William J. Barrow

**Potter Minton, P.C.:** Allen F. Gardner, Michael E. Jones

This 26th Day of November, 2014

  /s/ Jeffrey D. Mills
Jeffrey D. Mills

ii

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

## CERTIFICATE OF INTEREST

Counsel for Appellee Samsung Semiconductor, Inc. certifies the following:

1.    The full name of the party represented by me is Samsung Semiconductor, Inc.

2.    The name of the real party in interest represented by me is Samsung Semiconductor, Inc.

3.    Samsung Semiconductor, Inc. is a privately held, wholly-owned subsidiary of Samsung Electronics America, Inc., which is a privately held, wholly-owned subsidiary of Samsung Electronics Co., Ltd. ("SEC"). SEC is a Korean corporation that is publicly traded on the Korean Stock Exchange. It has no parent corporation, and there are no other publicly-held corporations that own 10% or more of its stock.

4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

**King & Spalding LLP**: Jeffrey D. Mills, Bruce W. Slayden II, Adam M. Conrad, R. William Beard, Jr., Brian C. Banner, Amina S. Dammann, Paul J. Andre, Lisa Kobialka

**Covington & Burling LLP**: Robert D. Fram, Hankil D. Kang

**Steptoe & Johnson**: John M. Caracappa, Paul A. Gennari, Scott D. Watkins, William J. Barrow

**Potter Minton, P.C.**: Allen F. Gardner, Michael E. Jones

This 26th Day of November, 2014

  /s/ Jeffrey D. Mills
Jeffrey D. Mills

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

## CERTIFICATE OF INTEREST

Counsel for Appellee Silicon Storage Technology, Inc. certifies the following:

1.    The full name of the party represented by me is Silicon Storage Technology, Inc.

2.    The name of the real party in interest represented by me is Silicon Storage Technology, Inc.

3.    Silicon Storage Technology, Inc. is a wholly-owned subsidiary of Microchip Technology, Inc. ("Microchip"). Microchip is a Delaware corporation that is publicly traded.

4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

> **King & Spalding LLP**: Jeffrey D. Mills, Bruce W. Slayden II, Adam M. Conrad, R. William Beard, Jr., Brian C. Banner, Amina S. Dammann, Paul J. Andre, Lisa Kobialka

> **Capshaw DeRieux LLP**: S. Calvin Capshaw, Elizabeth DeRieux, Jeff Rambin

This 26th Day of November, 2014

 /s/ Jeffrey D. Mills

Jeffrey D. Mills

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

**CERTIFICATE OF INTEREST**

Counsel for Appellee Taiwan Semiconductor Manufacturing Co., Ltd. certifies the following:

1.    The full name of the party represented by me is Taiwan Semiconductor Manufacturing Co., Ltd.

2.    The name of the real party in interest represented by me is Taiwan Semiconductor Manufacturing Co., Ltd.

3.    Taiwan Semiconductor Manufacturing Co., Ltd. is a Taiwan corporation that has no parent corporation and no publicly held corporation owns 10% or more of its stock.

4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

**King & Spalding LLP**: Jeffrey D. Mills, Bruce W. Slayden II, Adam M. Conrad, R. William Beard, Jr., Brian C. Banner, Amina S. Dammann, Paul J. Andre, Lisa Kobialka

**Slater & Matsil, L.L.P.**: Steven H. Slater, Roger C. Knapp, Natalie D. Swider

**Ward & Smith Law Firm**: Thomas John Ward, Jr.

This 26th Day of November, 2014

  /s/ Jeffrey D. Mills
Jeffrey D. Mills

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

**CERTIFICATE OF INTEREST**

Counsel for Appellee TSMC North America certifies the following:

1.     The full name of the party represented by me is TSMC North America.

2.     The name of the real party in interest represented by me is TSMC North America.

3.     TSMC North America is a a California corporation and is a wholly-owned subsidiary of Taiwan Semiconductor Manufacturing Co., Ltd., which is a Taiwan corporation that has no parent corporation and no publicly held corporation owns 10% or more of its stock.

4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

> **King & Spalding LLP**: Jeffrey D. Mills, Bruce W. Slayden II, Adam M. Conrad, R. William Beard, Jr., Brian C. Banner, Amina S. Dammann, Paul J. Andre, Lisa Kobialka

> **Slater & Matsil, L.L.P.**: Steven H. Slater, Roger C. Knapp, Natalie D. Swider

> **Ward & Smith Law Firm**: Thomas John Ward, Jr.

This 26th Day of November, 2014

  /s/ Jeffrey D. Mills
  Jeffrey D. Mills

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

## CERTIFICATE OF INTEREST

Counsel for Appellee Analog Devices, Inc. certifies the following:

1.      The full name of the party represented by me is Analog Devices, Inc.

2.      The name of the real party in interest represented by me is Analog Devices, Inc. ("ADI").

3.      ADI is a Massachusetts corporation that is publicly traded on the NASDAQ stock exchange under the symbol "ADI." ADI has no parent corporation and no publicly held company owns 10% or more of its stock.

4.      The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

**King & Spalding LLP**: Jeffrey D. Mills, Bruce W. Slayden II, Adam M. Conrad, R. William Beard, Jr., Brian C. Banner, Amina S. Dammann, Paul J. Andre, Lisa Kobialka

**Howrey LLP**: Renee DuBord Brown, Ryan James Moran

This 26th Day of November, 2014

  /s/ Jeffrey D. Mills
Jeffrey D. Mills

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

**CERTIFICATE OF INTEREST**

Counsel for Appellee International Business Machines Corporation certifies the following:

1.     The full name of the party represented by me is International Business Machines Corporation.

2.     The name of the real party in interest represented by me is International Business Machines Corporation ("IBM").

3.     IBM is a New York corporation that is publicly traded on the New York stock exchange under the symbol "IBM." IBM has no parent corporation and no publicly held company owns 10% or more of its stock.

4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

**King & Spalding LLP:** Jeffrey D. Mills, Bruce W. Slayden II, Adam M. Conrad, R. William Beard, Jr., Brian C. Banner, Amina S. Dammann, Paul J. Andre, Lisa Kobialka

**Jones Day:** John A. Marlott, Emily Merkler Wood

**Coleman & Coleman, PC:** Debra Coleman

**Albritton Law Firm:** Eric M. Albritton

This 26th Day of November, 2014

 /s/ Jeffrey D. Mills                              
Jeffrey D. Mills

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

## CERTIFICATE OF INTEREST

Counsel for Appellee Intel Corporation certifies the following:

1.　　The full name of the party represented by me is Intel Corporation.

2.　　The name of the real party in interest represented by me is Intel Corporation ("Intel").

3.　　Intel is a Delaware corporation that is publicly traded on the NASDAQ stock exchange under the symbol "INTC." Intel has no parent corporation and no publicly held company owns 10% or more of its stock.

4.　　The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

**King & Spalding LLP:** Jeffrey D. Mills, Bruce W. Slayden II, Adam M. Conrad, R. William Beard, Jr., Brian C. Banner, Amina S. Dammann, Paul J. Andre, Lisa Kobialka

**Fish & Richardson PC:** Ruffin B. Cordell, Christopher Glenn Smith, Lauren A. Degnan

**Parker, Bunt & Ainsworth, P.C.:** Robert M. Parker, Robert Christopher Bunt

**Gillam & Smith LLP:** Harry Lee Gillam, Jr.

This 26th Day of November, 2014

　　　　　　　　　　　　　　　　　 /s/ Jeffrey D. Mills
　　　　　　　　　　　　　　　　　Jeffrey D. Mills

ix

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

**CERTIFICATE OF INTEREST**

Counsel for Appellee National Semiconductor Corporation certifies the following:

1.     The full name of the party represented by me is National Semiconductor Corporation.

2.     The name of the real party in interest represented by me is National Semiconductor Corporation ("NSC").

3.     NSC is a Delaware corporation that wholly owned by Texas Instruments Incorporated ("TI"). TI is traded on the NASDAQ stock exchange under the symbol "TXN." TI has no parent corporation and no publicly held company owns 10% or more of its stock.

4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

**King & Spalding LLP:** Jeffrey D. Mills, Bruce W. Slayden II, Adam M. Conrad, R. William Beard, Jr., Brian C. Banner, Amina S. Dammann, Paul J. Andre, Lisa Kobialka

**Wilson Sonsini Goodrich & Rosati:** Stefani E. Shanberg

This 26th Day of November, 2014

  /s/ Jeffrey D. Mills
Jeffrey D. Mills

x

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

## CERTIFICATE OF INTEREST

Counsel for Appellee NXP Semiconductors USA, Inc. certifies the following:

1.     The full name of the party represented by me is NXP Semiconductors USA, Inc.

2.     The name of the real party in interest represented by me is NXP Semiconductors USA, Inc. ("NXP").

3.     NXP is a Delaware corporation. NXP is a wholly owned subsidiary of NXP B.V., which is a wholly owned subsidiary of NXP Semiconductors N.V., which is publicly traded on the NASDAQ stock exchange under the symbol "NXPI."

4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

**King & Spalding LLP:** Jeffrey D. Mills, Bruce W. Slayden II, Adam M. Conrad, R. William Beard, Jr., Brian C. Banner, Amina S. Dammann, Paul J. Andre, Lisa Kobialka

**Howrey LLP:** Denise M. De Mory, Aaron R. Hand

**Dewey & LeBoeuf:** Denise M. De Mory, Aaron R. Hand

**Bunsow, De Mory, Smith & Allison LLP:** Denise M. De Mory, Aaron R. Hand

This 26th Day of November, 2014

 /s/ Jeffrey D. Mills                           
Jeffrey D. Mills

xi

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

## CERTIFICATE OF INTEREST

Counsel for Appellee Texas Instruments Incorporated certifies the following:

1.    The full name of the party represented by me is Texas Instruments Incorporated.

2.    The name of the real party in interest represented by me is Texas Instruments Incorporated ("TI").

3.    TI is a Delaware corporation that is publicly traded on the NASDAQ stock exchange under the symbol "TXN." TI has no parent corporation and no publicly held company owns 10% or more of its stock.

4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

**King & Spalding LLP:** Jeffrey D. Mills, Bruce W. Slayden II, Adam M. Conrad, R. William Beard, Jr., Brian C. Banner, Amina S. Dammann, Paul J. Andre, Lisa Kobialka

**The Roth Law Firm:** Amanda Aline Abraham, Brendan Clay Roth, Carl R. Roth

This 26th Day of November, 2014

  /s/ Jeffrey D. Mills
Jeffrey D. Mills

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

## CERTIFICATE OF INTEREST

Counsel for Appellee Microchip Technology Inc. certifies the following:

1.     The full name of the party represented by me is Microchip Technology Inc.

2.     The name of the real party in interest represented by me is Microchip Technology, Inc. ("Microchip").

3.     Microchip is a Delaware corporation that is publicly traded on the NASDAQ stock exchange under the symbol "MCHP." Microchip has no parent corporation and no publicly held company owns 10% or more of its stock.

4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

**King & Spalding LLP:** Jeffrey D. Mills, Bruce W. Slayden II, Adam M. Conrad, R. William Beard, Jr., Brian C. Banner, Amina S. Dammann, Paul J. Andre, Lisa Kobialka

**Capshaw DeRieux LLP:** S. Calvin Capshaw, Elizabeth DeRieux, Jeff Rambin

This 26th Day of November, 2014

  /s/ Jeffrey D. Mills
Jeffrey D. Mills

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Keranos, LLC v. Analog Devices, Inc.

Nos. 2014-1360, -1500

## CERTIFICATE OF INTEREST

Counsel for the Appellee Apple Inc. certifies the following:

1.     The full name of every party or amicus represented by me is: Apple Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: n/a

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: None

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

**Fish & Richardson P.C.**: Ruffin B. Cordell, John R. Lane, Leeron G. Kalay, John P. Brinkmann, Katrina G. Eash, Bailey K. Harris

**Weil Gotshal & Manges LLP**: Garland T. Stephens

**Albritton Law Firm**: Eric M. Albritton and Shawn A. Latchford

**Coleman & Coleman, PC**: Debra Coleman

This 26th Day of November, 2014

 /s/ Jeffrey D. Mills
Jeffrey D. Mills*

*Counsel has consent of Appellee Apple Inc. to file the foregoing document.

## TABLE OF CONTENTS

CONFIDENTIAL MATERIAL OMITTED ...................................................... xviii

TABLE OF AUTHORITIES ................................................................... xix

STATEMENT OF RELATED CASES ...................................................1

STATEMENT OF JURISDICTION.......................................................1

INTRODUCTION ...............................................................................2

STATEMENT OF THE ISSUES..........................................................3

STATEMENT OF THE CASE...............................................................4

    A.    The Patents. ...........................................................................4

    B.    In 2000, Keranos's Principal Became Aware That SST SuperFlash® Memory Does Not Infringe. ...........................................8

    C.    The 2010 Lawsuits. ...............................................................9

        1.    Standing. ...................................................................10

        2.    Keranos's Infringement Contentions. ........................11

        3.    Keranos's Motion For Leave To Amend. ..................14

        4.    The District Court's Decisions................................16

SUMMARY OF ARGUMENT ...........................................................19

STANDARD OF REVIEW .................................................................23

ARGUMENT ....................................................................................23

I.    KERANOS LACKS STANDING.................................................23

II.    THE DISTRICT COURT PROPERLY DENIED KERANOS'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS. ...........................................................................28

A.  In The Eastern District Of Texas, Plaintiffs Must Diligently Analyze Publicly Available Information Before Serving Infringement Contentions And May Amend Those Contentions Only Upon A Showing Of Good Cause. .............................................29

B.  The District Court's Finding That Keranos Lacked Diligence Is Amply Supported. ...............................................................31

    1.  Keranos Failed To Search Publicly Available Information And Instead Shifted The Burden To Defendants. ...............................................................32

    2.  Keranos Failed To Amend Promptly Even After Shifting The Burden To Defendants. ......................................................35

C.  Keranos Identifies No Legitimate Reason To Disturb The District Court's Finding That It Lacked Diligence. ............................36

    1.  Keranos's Pre-filing Efforts Were Inadequate. .......................37

    2.  Keranos Made No Effort To Identify The Additional Products. ....................................................................40

        a.  Keranos Did Not Satisfy the Patent Rule Requirements By Generally referring To The SuperFlash® Mark Or Entire Product Families. ............41

        b.  Keranos's Lack Of Diligence Is Not Excused Because The Products Were Sold Years Before Keranos Filed This Lawsuit. .............................................45

        c.  Keranos Did Not Comply With The Rules By Providing An Infringement Theory. ...............................46

D.  Keranos's Lack of Diligence Applies To All Defendants And Excluded Products, Including Samsung, TSMC, ADI, Freescale, And Microchip. .....................................................50

    1.  Samsung. ................................................................50

    2.  TSMC. ...................................................................52

    3.  Microchip, ADI, TI, And Freescale. .........................................53

E.      The Other Factors Do Not Excuse Keranos's Lack of Diligence........53

III.    THE DISTRICT COURT IMPOSED NO SANCTION ON KERANOS. ...............................................................................................57

CONCLUSION ...........................................................................................61

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

## **CONFIDENTIAL MATERIAL OMITTED**

Confidential material that is subject to a protective order (A26521-57) has been omitted from this public version of the brief.  The material omitted on pages 9, 25, and 27-28 describes the terms of the agreement between UMod and Keranos; the material on pages 18 and 56 describes the dollar amount of sales for the products discussed; and the material omitted on page 49 describes the location where products of certain specific defendants are manufactured.

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*3Com Corp. v. D-Link Sys., Inc.*,
　　No. C 03-2177, 2007 WL 949599 (N.D. Cal. 2007) .........................................30

*Abraxis Bioscience, Inc. v. Navinta LLC*,
　　625 F.3d 1359 (Fed. Cir. 2010).........................................................................23

*Acer, Inc. v. Tech. Properties Ltd.*,
　　No. 5:08-cv-877, 2010 WL 3618687 (N.D. Cal. Sept. 10, 2010)....................57

*Alexsam Inc. v. IDT Corp.*,
　　No. 2:07-cv-420-CE, 2011 WL 108725 (E.D. Tex. Jan. 12, 2011)........... 30, 59

*Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*,
　　604 F.3d 1354 (Fed. Cir. 2010)..........................................................................26

*AntiCancer, Inc. v. Pfizer, Inc.*,
　　769 F.3d 1323 (Fed. Cir. 2014)..........................................................................59

*Arachnid, Inc. v. Merit Indus.*,
　　939 F.2d 1574 (Fed. Cir. 1991)..........................................................................27

*Asus Computer Int'l v. Round Rock Research, LLC*,
　　No 12-cv-02099, 2014 WL 1463609 (N.D. Cal. April 11, 2014) ....................43

*Azure Networks, LLC v. CSR PLC*,
　　No. 2013-1459, Slip op. (Fed. Cir. Nov. 6, 2014) .................................... 20, 25

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
　　922 F.2d 792 (Fed. Cir. 1990)............................................................................46

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
　　21 F.3d 1558 (Fed. Cir. 1994)............................................................................26

*Biotechnology Indus. Org. v. District of Columbia*,
　　496 F.3d 1362 (Fed. Cir. 2007)................................................................. 25, 27

*Computer Acceleration Corp. v. Microsoft Corp.*,
　　503 F. Supp. 2d 819 (E.D. Tex. 2007) ..............................................................60

*Connectel, LLC v. Cisco Sys., Inc.*,
　　391 F. Supp. 2d 526 (E.D. Tex. 2005) ...................................................... 29, 47

*Corley v. United States*,
　　556 U.S. 303 (2009) ...........................................................................................47

*CQ, Inc. v. TXU Mining Co.*,
  565 F.3d 268 (5th Cir. 2009)............................................................................59

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*,
  261 U.S. 24 (1923) ................................................................. passim

*Exelon Wind 1, L.L.C. v. Nelson*,
  766 F.3d 380 (5th Cir. 2014)............................................................................47

*Geiserman v. MacDonald*,
  893 F.2d 787 (5th Cir. 1990)............................................................................57

*Genentech, Inc. v. Amgen, Inc.*,
  289 F.3d 761 (Fed. Cir. 2002)............................................................ 23, 37, 40

*Glenayre Elecs., Inc. v. Jackson*,
  443 F.3d 851 (Fed. Cir. 2006)..........................................................................49

*Global Sessions LP v. Travelocity.com LP*,
  No. 6:10-cv-671, 2012 WL 1903903
  (E.D. Tex. May 25, 2012) ........................................................... 30, 47, 56, 57

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  No. 2013-1472, 2014 WL 5352367 (Fed. Cir. Oct. 22, 2014) .........................48

*In re Adams*,
  734 F.2d 1094 (5th Cir. 1984)..........................................................................37

*In re Apple Inc.*,
  456 F. App'x 907 (Fed. Cir. 2012) ..................................................................56

*In re VTech Commc'ns, Inc.*,
  Misc. No. 909, 2010 WL 46332 (Fed. Cir. Jan. 6, 2010) .................................56

*Infineon Techs. AG v. Volterra Semiconductor Corp.*,
  No. 11-6239, 2012 WL 6184394 (N.D. Cal. Dec. 11, 2012).................... 31, 43

*KG v. Meccanica Euro Italia S.P.A.*,
  944 F.2d 870 (Fed. Cir. 1991)..........................................................................25

*Levine v. Samsung Telecommunications Am., LLC*,
  No. 2:09-cv-372 (E.D. Tex. July 27, 2012) .....................................................37

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
  134 S. Ct. 2111 (2014) .....................................................................................48

*Linex Techs., Inc. v. Belkin Int'l, Inc.*,
  628 F. Supp. 2d 703 (E.D. Tex. 2008)..............................................................47

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F.3d 1359 (Fed. Cir. 2008)................................................................ passim

*Mars, Inc. v. Coin Acceptors, Inc.*,
    557 F.3d 1377 (Fed. Cir. 2009)................................................................ 19, 24

*MediaTek, Inc. v. Freescale Semiconductor, Inc.*,
    No. 11-5341, 2013 WL 2403644 (N.D. Cal. May 31, 2013).............. 42, 45, 57

*MediaTek, Inc. v. Freescale Semiconductor, Inc.*,
    No. 11-5341, 2013 WL 588760 (N.D. Cal. Feb. 13, 2013) ................ 31, 43, 44

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
    No. C 08-04567, 2009 WL 3353306 (N.D. Cal. Oct. 16, 2009)............... 33, 57

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332 (Fed. Cir. 2007).....................................................................26

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008).....................................................................48

*O2 Micro Int'l Ltd. v. Monolithic Power Sys.*,
    467 F.3d 1355 (Fed. Cir. 2006)............................................................. passim

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*,
    449 F. App'x 923 (Fed. Cir. 2011) ...............................................................58

*Oracle Am. Inc. v. Google Inc.*,
    No. C 10-03561, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) ........ 43, 44, 59

*Orion IP, LLC v. Staples, Inc.*,
    No. 2:04-cv-297 (E.D. Tex. July 7, 2005) .....................................................55

*Paradise Creations, Inc. v. UV Sales, Inc.*,
    315 F.3d 1304 (Fed. Cir. 2003).....................................................................23

*Prima Tek II, L.L.C. v. A-Roo Co.*,
    222 F.3d 1372 (Fed. Cir. 2000).....................................................................26

*Realtime Data, LLC v. Packeteer, Inc.*,
    No. 6:08-cv144, 2009 WL 2590101 (E.D. Tex. Aug. 8, 2008) ................ 36, 45

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995)................................................................. 23, 26

*S&W Enters. L.L.C. v. SouthTrust Bank of Ala., NA*,
    315 F.3d 533 (5th Cir. 2003).........................................................................30

*SanDisk Corp. v. Memorex Prods., Inc.*,
    415 F.3d 1278 (Fed. Cir. 2005).....................................................................37

*SmartPhone Techs. LLC v. HTC Corp.*,
    No. 6:10cv580, 2012 WL 1424173 (E.D. Tex. Mar. 16, 2012)................. 30, 57

*Speedtrack, Inc. v. Endeca Techs., Inc.*,
    524 F. App'x 651 (Fed. Cir. 2013) ....................................................41

*STMicroelectronics, Inc. v. Motorola, Inc.*,
    307 F. Supp. 2d 845 (E.D. Tex. 2004) ................................................ 22, 30, 40

*United States v. Campbell*,
    711 F.2d 159 (11th Cir. 1983) (per curiam)......................................51

*Valmet Paper Mach., Inc. v. Beloit Corp.*,
    868 F. Supp. 1085 (W.D. Wis. 1994) ..............................................27

*Veillon v. Exploration Servs., Inc.*,
    876 F.2d 1197 (5th Cir. 1989).........................................................51

*Vemex Trading Corp. v. Tech. Ventures, Inc*.,
    563 F. App'x 318, 327 (5th Cir. 2014) (per curium) ......................41

*Vigilos LLC v. Sling Media Inc.*,
    No. C-11-04117, 2012 WL 9973147 (N.D. Cal. July 12, 2012) .............. 43, 48

## Statutes

28 U.S.C. § 1295 ...............................................................................1

28 U.S.C. § 1338 ...............................................................................1

## Rules

E.D. Tex. L. Civ. R. 7 ......................................................................51

Fed. R. Civ. P. 16 ............................................................................21

P.R. 3-1 ........................................................................... 29, 46, 47

P.R. 3-6 ............................................................................ 15, 30

## STATEMENT OF RELATED CASES

Appellees agree with the statement of related cases provided by Plaintiff-Appellant Keranos, LLC ("Keranos").

## STATEMENT OF JURISDICTION

Keranos has sought to premise jurisdiction in the district court on 28 U.S.C. §1338(a) and in this Court on 28 U.S.C. §1295(a)(1). Appellees contend, however, that the district court, and this Court, lack subject matter jurisdiction because Keranos lacks standing. *See infra*, Part I.

## **INTRODUCTION**

Keranos asserted three expired patents that it does not own against 49 defendants, and in pursuing this litigation flouted the local Patent Rules that govern the orderly conduct of patent litigations in the Eastern District of Texas.

Keranos's original complaint named only a "handful" of products. A7-8. Some of those products included the allegedly infringing Silicon Storage Technology, Inc. ("SST") SuperFlash® memory; some did not. Eighteen months later, Keranos served infringement contentions accusing the same products identified in its complaint. Keranos made virtually no effort to search for or identify additional products containing SuperFlash® memory, or even to narrow the products it had identified to those containing SuperFlash® memory, even though all of these products were publicly available years before the lawsuit. A7-8, 12-13.

Instead, Keranos viewed such efforts as "cumbersome and expensive" and improperly shifted the burden to Defendants to perform the investigation that the Patent Rules mandate is Keranos's responsibility. A8. Keranos served interrogatories on each Defendant and demanded they identify additional products with a threat of a motion to compel. Then, more than two years after filing its complaint, Keranos sought leave to amend its contentions under the Patent Rules to add the products that Defendants (but not Keranos) identified. Exercising sound

2

discretion, the district court denied leave to amend because Keranos had failed to show "good cause." Keranos then voluntarily dismissed the infringement claims against the products it had actually named in its original contentions.

For two independent reasons, this Court should not reward Keranos's improper conduct. First, Keranos lacks standing to sue for past damages. Under Supreme Court precedent, a plaintiff must possess both legal title and the right to sue for past damages to have standing. *See Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40 (1923). The district court found, and Keranos admits, that another entity holds legal title to the asserted patents.

Second, the district court appropriately denied Keranos's motion for leave to amend its infringement contentions to add thousands of products to the case. "Good cause" exists only where a plaintiff acted diligently in searching for and naming accused products. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006). The district court found that Keranos was not diligent, and that factual finding is amply supported. A6-8, A12-13. Any other conclusion would subvert the purpose of the Patent Rules because "the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." *O2 Micro*, 476 F.3d at 1366.

## STATEMENT OF THE ISSUES

This appeal presents the following issues:

(1)      Whether Keranos has standing when it does not own the asserted patents, the parties did not intend to transfer ownership of the patents to Keranos, and the patents expired long before Keranos existed or obtained the right to sue for past infringement?

(2)      Whether the district court abused its discretion in denying Keranos's motion to amend its infringement contentions because Keranos was not diligent in searching for and naming the additional products?

## STATEMENT OF THE CASE

Keranos's statement of the case is argumentative, incomplete, and often unsupported or contrary to the district court's findings. Among other things, Keranos omits that it is not the owner of the asserted patents and that it voluntarily dismissed allegations against a substantial number of formerly accused products. To correct these and other deficiencies, Appellees submit this complete statement of the case.

### A.    The Patents.

This case involves three expired patents: U.S. Patent No. 4,795,719 ("'719 Patent") (A247), U.S. Patent No. 4,868,629 ("'629 Patent") (A259), and U.S. Patent No. 5,042,009 ("'009 Patent") (A287). All three patents relate generally to floating gate transistors, which can be used to store digital data as part of a computer memory. *See, e.g.*, A26141. None of these patents were "pioneering" in

nature, as Keranos contends.  Defendants' expert opined that no fewer than five prior art references anticipate each asserted claim when given the broad scope urged by Keranos.  A26247-48.  The '719 and '629 Patents issued in 1989 and expired in 2006; the '009 Patent issued in 1991 and expired in 2008.  A247, A259, A287.

The '719 Patent claims a method of manufacturing a particular type of floating gate transistor called a split gate transistor, and the '629 Patent claims a device resulting from that manufacturing process.  Keranos Brief 8 ("KBr."); A257-58, A274-75.  Though Keranos alleges that an invention lies in creating "a predictable channel length underlying the floating gate" (KBr. 8), this language is not found in the claimed process steps.  A257-58.  In general, the claimed manufacturing process involves forming a floating gate 52 on a silicon substrate 50 separated by an insulation layer 51, and then forming a photoresist pattern 53 over the floating gate and substrate (Fig. 5a).  A254.



FIG. 5a

FIG. 5b

A249.  Openings are then made in the photoresist pattern 53, one to expose floating gate edge 52a, and another to expose a portion of the substrate spaced apart from the floating gate (Fig. 5b).  A254.  Impurities are then implanted through the openings to form source region 54a and drain region 54b.  This creates a drain region that is "self-aligned" to floating gate edge 52a.  A254.  The remaining process steps—which include forming an insulating layer over the floating gate and forming a control gate—are also standard and well known. A254.  The court construed the claimed steps to require implanting the source and drain region first before forming any additional layers to cover the floating gate. A26163-68.

The transistors in the SST SuperFlash® memory are made by different processes that result in fundamentally different transistors.  The source and drain

are not implanted until the floating gate is covered by other layers, and no drain region edge is aligned with a floating gate edge.  A6533-34.  Instead, thick insulating oxide (beige) and control gate layers (WL) are formed before implanting occurs, the drain region (BL) is implanted along the edge of the control gate not the floating gate (FG), and the source region (SL) is diffused halfway under the floating gate to create a deliberate non-alignment between the floating gate and source region edges:



A1202.  Indeed, prior to appeal, Keranos stated that it would withdraw its '719 Patent infringement claims.  A26250 n.1.

Unlike the '629 and '719 Patents, the '009 Patent relates to floating gate transistors generally.  A303-04; A26145-47.  The patent claims a method of programming these transistors by hot electron injection (*e.g.*, applying electric voltages to the transistors to put the transistor in a charged state).  Claim 1, for example, includes the steps of "applying a programming voltage" sufficient for programming, and "ensuring" that the "programming drain current" remains "less than a predetermined value" during programming.  A303.  The district court

rejected Keranos's attempt (repeated at KBr. 9) to rewrite the "ensuring" step to replace "predetermined value" with the maximum current supplied by an on-chip charge pump. A26150-51; A26155 ("ensuring" step requires "making certain" that drain current during programming "is less than a drain current value determined before hot electron injection programming occurs").

Programming SST SuperFlash® memory transistors likewise fundamentally differs from the claimed programming method of the '009 Patent. For example, the non-alignment of the source region and floating gate helps to minimize the amount of drain current needed to program. A26333 ¶45. Thus, there is no concern that the required drain current will exceed the supplied current, and programming occurs without having to *ensure* that the programming drain current remains less than any predetermined value. A26345:16-22; A26004-05.

## B.    In 2000, Keranos's Principal Became Aware That SST SuperFlash® Memory Does Not Infringe.

All three patents originally issued to Waferscale Integration, Inc. A247, A259, A287. In 1995, Waferscale alleged that SST's SuperFlash® memory infringed these three patents. A26085, A26087. SST denied infringement then (as it does now), and Waferscale never filed suit. A26106-10.

In 2000, Peter Courture and his company, United Module Corporation ("UMod"), acquired the asserted patents. A26071-83, A26201-05, A26022-24, A26026. J. Nicholas Gross acted as UMod's attorney for the acquisition. A26200-

***Confidential Material Subject to a Protective Order Has Been Redacted***

05.   Gross and Courture knew that Waferscale had previously accused SST's SuperFlash® memory of infringement and that SST had denied infringement. A26066-69, A26127-28; A26130-31.   UMod, like Waferscale, chose not to file suit.

Years later in October 2009, Gross, again acting as UMod's attorney, recorded the 2000 Waferscale to UMod patent assignment with the Patent Office. A26201-05.  In February 2010, after the patents expired, Gross formed Keranos as a Texas corporation, with Gross as sole principal.  A26028-29.

Days after formation, Keranos executed an "Exclusive Patent License and Royalty Agreement" with UMod.   A26212-17.   Under the Agreement, UMod retained ownership of the patents: ███████████████████████████

████████████████████ A26214 ¶10.  UMod granted Keranos the right to collect past damages for allegedly infringing activities that occurred years earlier, before the patents expired and Keranos existed.   A26213 ¶3.   In exchange, Keranos promised to pay UMod a percentage ██████ of the net proceeds obtained from enforcement.  A26214 ¶8.  Gross signed the agreement on behalf of Keranos, and Courture signed for UMod.  A26216.

## C.    The 2010 Lawsuits.

On June 23, 2010, Keranos filed an action in the Eastern District of Texas against forty-nine defendants, including SST's customers and licensees (but not

SST).  A22879-81.  SST and some Texas Defendants filed declaratory judgment actions in the Northern District of California against Keranos, UMod, Gross, and Courture.  KBr. 6.  Those actions were transferred to the Eastern District of Texas, where the cases proceeded together through claim construction.  A198 (Dkt. 85).

In January 2012, the court realigned the parties.[1]  A1003-05.  In one case ("Manufacturer Case"), the Defendants were SST, several manufacturing licensees of SST's SuperFlash® memory (including Freescale, TSMC, and Samsung), and SST's parent, Microchip Technology, Inc.  KBr. 7 n.4.  In the companion case ("Customer Case"), the Defendants were seven customers of SST's SuperFlash® memory.  KBr. 7 n.5.  The cases proceeded in parallel, and the court set the Manufacturer Case for trial first.

### 1.    Standing.

Twenty-nine Defendants moved to dismiss Keranos's suit for lack of standing.  Keranos's complaint stated that UMod "owns all right, title and interest in the Patents-in-Suit," and that Keranos holds only the "applicable exclusive enforcement rights for infringement of the Patents-in-Suit."  A22888.  Defendants argued that Keranos did not own legal title to the patents during the period of alleged infringement, does not own legal title now, and therefore lacks standing.  A23308-09.

---

[1]    By then, twenty of the original forty-nine Defendants remained in the case. Six of these Defendants settled or were dismissed after realignment.

The district court denied these motions. A23312-14. The court concluded that, even though UMod legally owned the patents, Keranos had acquired "all substantial rights" and thus had standing. A23314. Based on a single decision from another district court, the district court here attempted to distinguish the Supreme Court's decision in *Crown Die*, which found no standing for past damages where ownership and the right to sue were held by separate entities. A23312-14.

### 2. Keranos's Infringement Contentions.

Keranos's complaint identified a handful of accused products, purportedly based on "press releases and other public literature." A22888-930. Some of those products contain SuperFlash® memory; some do not. *E.g.*, A22896 ¶54, A22910 ¶83, A22929-30 ¶122.

Nearly eighteen months after filing its complaint, Keranos served its infringement contentions as required by the district court's Patent Rules. A1844-69. With one exception,[2] those contentions alleged infringement by the *exact same* products named in its complaint. A2241 (comparison table).

Keranos then served interrogatories asking each defendant to identify all products containing SuperFlash® memory. *E.g.*, A1070. In March 2012, Defendants objected on several grounds, including that the information "is already

---

[2] Keranos dropped three products from its allegations against Microchip. A2241.

obtainable from some other source that is more convenient, less burdensome, or less expensive." *See, e.g.*, A2040 (Freescale); A2052 (National Semiconductor Corp. ("NSC")); A2063 (Texas Instruments ("TI")); A2074 (Samsung); A1949 (Microchip); A2028 (TSMC); A2017 (Analog Devices, Inc. ("ADI")); A2262-63 (Intel objecting to request as seeking identification for products outside of infringement contentions). Under protest, Defendants Microchip, ADI, and TSMC identified products beyond the handful listed in Keranos's contentions. A1950-52, A1963-2011; A2013-22; A2024-34.

Similarly, defendant Apple objected to providing "information related to any Apple products except the actual product(s) listed and charted in Keranos's Infringement Contentions, to the extent there are any." A22462. Despite objecting, Apple produced 23,000 pages of specifications, schematics, and bills of materials for every product sold by Apple during the damages period (including products not accused) that showed the model number and supplier of the relevant memory for every product. A20971. In subsequent correspondence, Apple further noted that the products "are widely available and have been for years." A22168. Similarly, Intel produced documents showing all SST SuperFlash® memory that it had purchased during the relevant time period. A18776-77.

On May 3, 2012, without leave of court, Keranos served "supplemental" contentions. A22144; A2091-221. These contentions included some new

information, including "reverse engineering" analyses of products performed after Keranos served its initial contentions. *See, e.g.*, A22142, A2092, A2175-81, A2212-18. Keranos also sought to add hundreds of cites to public documents and information that were not mentioned in its initial contentions. A2133-38, A2175-81, A2212-18. Defendants objected to Keranos's attempt to amend without leave of court, and to Keranos's attempt to add previously unidentified products "when the information concerning these products was publicly available and these products could have been included in Keranos's initial infringement contention claim charts." A2223-25; A22168. Keranos withdrew these contentions.

Defendants then offered to determine whether certain products were not publicly available if Keranos provided the baseline information it believed necessary to identify an infringing product. A2230-32. Defendants explained that Keranos had neither described its efforts "to investigate products" in its contentions nor alleged that it "was diligent in trying to seek such information." A2231. Keranos responded by threatening a motion to compel. A2235-36.

To avoid "burden[ing] the Court" Defendants then agreed to provide discovery regarding SST SuperFlash® products even for products not identified in Keranos's contentions. A2238-39. However, Defendants maintained "all objections to, and reserve[d] all rights to oppose, any attempt by Keranos to amend

its infringement contentions to include any products that were not identified in the Keranos [contentions]." *Id.*; *see also* A22168.

Between June 15 and July 2, several Defendants, including NSC, TI, NXP, Samsung, Intel, SST, and Freescale, identified products not named in Keranos's initial contentions. Several of these Defendants cited the public sources from which Keranos could have identified each product. *E.g.*, A3721-23 ("publicly available data sheets for [the named] products"), A3454-91 ("publicly available" URLs for product information), A6221-24 ("data sheets [that] are and have been publicly available").

### 3.    Keranos's Motion For Leave To Amend.

On July 20, 2012, Keranos moved for leave to amend its contentions to add thousands of publicly available products identified by Defendants. A1121, A1463. Keranos stated its intent was "to identify *additional Accused Products* of which Keranos has become aware *after service of its Infringement Contentions* and based principally on information included in discovery responses provided by Defendants." A1149 (emphasis added). Keranos omitted the products identified in its May "supplemental" charts served without leave.[3] Keranos claimed its initial contentions identified all the products that could be identified without either

---

[3]    *Compare,* A2175-81 ("April 19" supplement to '719 Patent claim chart adding NXP P89V51RD2FA product, NSC COP8SBR9HV8A product, Samsung S3F8278XZZ product, and Toshiba TMP91FY42FG product), *with* A1214-34 (products missing from July 20 supplemental '719 Patent claim chart).

(i) reverse-engineering the product, or (ii) obtaining public information that the product specifically contained SuperFlash® memory.  A1133-35.

Defendants, with the exception of Samsung, opposed Keranos's motion for leave because Keranos had failed to show "good cause."  Patent Rule ("P.R.") 3-6(b).  Defendants pointed out that every additional product Keranos sought to add had been publicly sold for years before Keranos served its contentions.  A6247.  Defendants also provided detailed evidence that (i) Keranos omitted products from its initial contentions even though it possessed documents that identified those products as having SuperFlash® memory;[4] (ii) Keranos was able to quickly identify additional products after serving its contentions (A16786-87); (iii) Keranos identified products in its initial contentions without information that the product contained SuperFlash® memory (A1143 ¶5); and (iv) Keranos could have identified virtually all of the products through simple internet searches that would have revealed the same kind of information Keranos relied on to identify products in its initial contentions.[5]  Keranos also waited more than four months after Defendants identified the additional products before moving to amend.  A16787-94 (Epson, ADI, Microchip, TSMC); A20971-72 (Apple); A18779-80 (Intel).

---

[4]    A1834 (Table B); A18982 (citing A20273-81) (SST); A1821 (citing A2346-69, A3101-16) (Epson); A1834 (Freescale); A18778-80 (citing A18809-905).

[5]    A16787-94 (Epson, Freescale, ADI, Microchip, NSC, TI); A20976-71 (Apple); A18956 (IBM); A18778 (Intel).

In reply, Keranos did not dispute these points. A5776-84. Nor did Keranos provide any evidence of its efforts to identify additional products in the eighteen months between filing its complaint and serving its contentions.

### 4.    The District Court's Decisions.

The district court denied Keranos's motion for leave to amend its contentions. A5-8. Following precedent, the court reiterated that the Patent Rules place "the burden . . . on Plaintiff, not Defendants, to search for and identify infringing products to the extent possible based on publically available information." A8. The court found that Keranos "failed to demonstrate that it acted diligently in searching for and naming the additional products." A7.

The district court further found that Defendants "demonstrate[d] a number of means through which [Keranos] could have identified [these] products" and that Keranos failed to "mak[e] these efforts." A7-8. Keranos instead "chose to list a handful of exemplar products and then demand that Defendants disclose additional products." *Id.* Keranos "simply did not exhaust its search, instead choosing to shift the burden to Defendants" because it "found the efforts to identify products to be expensive and cumbersome." A8. Finding "significant the sheer volume of the additional products," the court held that Keranos's burden shifting "is contrary to [its] responsibility under the local patent rules and demonstrates a lack of diligence by Plaintiff." *Id.*

Keranos moved for reconsideration claiming "newly discovered evidence." A6366-80.  The district court denied the motion, finding that it "raises the same arguments previously addressed."  A12.  For the first time in its reconsideration reply, Keranos sought "clarification" of the court's order as to TSMC, Freescale, and Microchip.  A6567.  Keranos argued it had adequately identified these Defendants' products in its initial contentions by referring generally to a product family encompassing each product specifically named in Keranos's motion to amend.  *Id.*  The court confirmed its prior order excluded all products Keranos sought leave to add, reiterating that Keranos "made virtually no effort to specifically identify the accused products as required by the local patent rules" while "demand[ing] that Defendants identify the allegedly offending products." A13.  Keranos's "disclosure of entire product families without [sic] limited or no attempt to narrow the accused product descriptions is inconsistent with the rules of this court."  *Id.*  Subsequently, the court rejected Keranos's attempt to raise this same argument as to certain IBM, Apple, and TI products in the Customer Case. A19-24.  With respect to Apple, the district court found that Keranos's identification of "iPhone," with no supporting documentation, was "not properly definite" because Apple sold five different iPhone models between 2004 and 2008. A20-21.

***Confidential Material Subject to a Protective Order Has Been Redacted***

Following the court's orders, Keranos took steps to obtain a final judgment for appeal, rather than hold a trial on the products identified in its initial contentions. A15625. Keranos voluntarily dismissed with prejudice its claims against SST and Microchip's products. A26174-75. Keranos also argued that its identification of Samsung's product families failed to meet the requirements of the district court's order, and urged the court to confirm that its order excluded all Samsung products regardless of whether Samsung had independently moved to exclude them. A15624 & n.3. The court accepted Keranos's invitation to exclude Samsung products. A26260:13-22.

At the court's suggestion, SST and the licensee Defendants moved for summary judgment based on Keranos's voluntary dismissal of its remaining claims. A26174-77; A26180-81. The district court granted both motions (A14, A15-16) and entered final judgment (A1).

Because the court ruled (without opposition) that its order denying leave to amend applied equally to the Customer Case (A18), Keranos took similar steps to obtain a final judgment in that case even though products of Apple, ADI, and TI remained in the case. A22853-54. These Defendants informed Keranos that the remaining products represented at least $█████████ in sales, yet Keranos voluntarily dismissed with prejudice its infringement claims rather than proceed to trial. A22853-54. Keranos similarly dismissed with prejudice its claims against

18

the Intel products and NXP products identified in its infringement contentions—products without SST SuperFlash® memory.    A22853-54.    The Customer Defendants moved for summary judgment, and the court entered final judgment. A17; A25-27.

Keranos appealed both final judgments.    A79; A120-21.    This Court consolidated the cases for appeal.

## SUMMARY OF ARGUMENT

Keranos has no one to blame but itself.    On the threshold question of jurisdiction, Keranos lacks standing because it did not hold legal title to the patents during the period of alleged infringement and does not claim to hold legal title today.    Moreover, even assuming Keranos had standing, it failed to exercise diligence in identifying and naming accused products and voluntarily dismissed its only timely claims.

I.  Keranos lacks standing.  A plaintiff in a patent infringement suit "must be the person or persons in whom the legal title to the patent resided at the time of the infringement." *Crown Die*, 261 U.S. at 40-41; *accord Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1370 (Fed. Cir. 2008), *modified on other grounds*, 557 F.3d 1377 (Fed. Cir. 2009).  The "single exception" to this rule requires two things:  (1) "an assignment of a patent" coupled with (2) "an assignment of a right of action for past infringements."    *Crown Die*, 261 U.S. at 40-41 (internal

quotation marks omitted).  Here, there was no assignment of the expired patents.
A22888 ¶35; A23309.    Keranos only acquired "the right to sue for past
infringement divorced from title," which is insufficient to confer standing.  *Mars*,
527 F.3d at 1372.

Contrary to the district court's finding (A23308-14), the "all substantial
rights" test cannot confer standing when only expired patents are at issue.  This test
is used to determine whether there has been an "effective assignment" in the
absence of an actual assignment of title.  *Azure Networks, LLC v. CSR PLC*, No.
2013-1459, Slip op. 8-9 (Fed. Cir. Nov. 6, 2014).  But there can be no "effective"
assignment of *expired* patents in the absence of transfer of title itself.  Expired
patents have no prospective right to exclude others, which is critical to the "all
substantial rights" test and the injury in fact necessary for standing.  *See id.* at 10.
*Crown Die* requires a patentee to hold both title and the right to sue for past
damages; the district court found that Keranos satisfied only half of that test.

II.  Even assuming Keranos has standing, it has no live claims.  There are
few, if any, circumstances where it is appropriate to add thousands of publicly
available products to a case years after filing the complaint.  This is not one of
them.  The district court correctly held that Keranos did not act diligently when it
"disclosed only a few products in its original contentions, [and] then demanded

that Defendants identify the remaining products that incorporate the accused technology." A8.

A.  Keranos flouted its obligations under the Patent Rules.  As the district court explained, Keranos had "a number of means through which [it] could have identified products incorporating the SuperFlash[®] technology" because those products were all publicly available well before suit was filed.  A7.  Yet Keranos did nothing to identify these products after filing its complaint and then, after shifting its identification burden onto Defendants, waited an additional four months to seek leave to amend its contentions.  *See* Part II.B.2.  This is undisputable. Keranos admits that it "did not perform the type of search for which it has been found to lack diligence."  A6566-67.  In view of Keranos's admission, the district court was well within its discretion to find that Keranos lacked good cause to amend.  *See O2 Micro*, 467 F.3d at 1366.

B.  Keranos challenges the district court's discretionary decision on the specious ground that the court "misconstrue[d]" its own rules.  KBr. 31.  The district court correctly concluded that a plaintiff must act diligently to search for and name accused products in its initial infringement contentions.  A5-6, 8, 12-13. This conclusion follows because the Patent Rules incorporate the "good cause" requirement of Federal Rule of Civil Procedure 16(b)(4).  To show good cause, Keranos must show that "the deadlines cannot reasonably be met despite the

diligence of the party needing the extension." *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845, 851 (E.D. Tex. 2004). Any other conclusion would be an invitation for plaintiffs to make a minimal initial showing as a means to burden defendants with open-ended fishing expeditions rendering the Patent Rules "virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." *O2 Micro*, 467 F.3d at 1366. Nothing in logic, the Patent Rules, or the rules of civil procedure mandate such a conclusion.

Keranos also argues that it had good cause to amend its contentions "[e]ven if" it "lacked diligence." KBr. 31. This is wrong as a matter of law. This Court has rejected the notion that a plaintiff can show good cause for amending its infringement contentions "without regard to its diligence in doing so." *O2 Micro*, 467 F.3d at 1366.

C. Finally, Keranos cannot mischaracterize the court's order as an improper sanction. The court did not invoke its sanction authority; it merely denied Keranos's request to amend its contentions where Keranos failed to show it acted diligently to comply with the Patent Rule deadlines. *See id.* at 1366-67. Keranos's contrary approach would again reward the least diligent and most egregious violators of the Patent Rules who do nothing to identify specific products by the deadline. The district court did not abuse its discretion by declining to reward Keranos's lack of diligence.

## STANDARD OF REVIEW

This Court reviews *de novo* the denial of a motion to dismiss for lack of standing. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995). Keranos bears the burden to prove that it has standing. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003).

This Court reviews decisions enforcing local patent rules related to infringement contentions for abuse of discretion, applying Federal Circuit law. *O2 Micro*, 467 F.3d at 1364, 1366-67. "[T]his court defers to the district court when interpreting and enforcing local rules so as not to frustrate local attempts to manage patent cases according to prescribed guidelines." *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002). "Decisions enforcing local rules . . . will be affirmed unless clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence." *O2 Micro*, 467 F.3d at 1366-67.

## ARGUMENT

### I.    KERANOS LACKS STANDING.

Standing is a constitutional requirement and a threshold jurisdictional issue. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010). Because Keranos has never held legal title to the asserted patents, it lacks standing to sue for past damages.

The Supreme Court made clear in *Crown Die* that an assignment of the right to sue for past damages without an assignment of the patent cannot confer standing. 261 U.S. at 38-39. The Court held that to have standing a plaintiff must have legal title to the patent at the time of the infringement, with only one exception—where the assignment of the patent is coupled with an assignment of the right to sue for past infringement. *Id.* at 40-41. This Court applied *Crown Die* to expired patents in *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372 (Fed. Cir. 2008), *modified on other grounds*, 557 F.3d 1377 (Fed. Cir. 2009). Thus, the rule here is simple: a plaintiff asserting infringement of expired patents that was not the title holder at the time of the alleged infringement must have received both (1) an assignment of the patent, and (2) an assignment of the right to sue for past infringement. Having one or the other is not enough.

Keranos lacks standing because it has never held legal title to the patents. Keranos did not hold legal title to the asserted patents during the period of alleged infringement because it did not exist. Keranos was formed in 2010 (A26028-29)—after all the patents expired. Nor is there any dispute that Keranos did not hold legal title to the patents when it filed suit. The district court found and Keranos admits that UMod "owns all right, title and interest in the Patents-in-Suit." A22888; A23309. The agreement between Keranos and UMod further makes clear that the parties intended legal title to remain with UMod. It states that UMod

24

***Confidential Material Subject to a Protective Order Has Been Redacted***

██████████████████████████████████ A26214 ¶10.  Having

obtained the right to sue for past infringement without obtaining an assignment of

the patents, Keranos "cannot sue at law at all." *Crown Die*, 261 U.S. at 44.

The district court erred by finding that Keranos did not have legal title but

that Keranos nevertheless had standing under the "all substantial rights" test.

A23312-14.  That conclusion conflicts with controlling authority in *Crown Die* and

*Mars*.  *Crown Die* is crystal clear that standing in this circumstance requires both

an assignment of the patent and an assignment of the right to sue for past

infringement.  261 U.S. at 40-41.  Where, as here, the patents are expired, anything

less than "an assignment of title" is insufficient to satisfy the first requirement.

*Mars*, 527 F.3d at 1371.

The "all substantial rights" test does not apply when only expired patents are

at issue.  That test is used to determine if there has been an "*effective* assignment"

for purposes of standing, where the substantial exclusionary right still exists.  *See*

*Azure Networks,* Slip op. 8-9; *Vaupel Textilmaschinen KG v. Meccanica Euro*

*Italia S.P.A.*, 944 F.2d 870, 876 (Fed. Cir. 1991).  But when a patent is expired, the

exclusionary right ceases to exist and can no longer be licensed.  *See*

*Biotechnology Indus. Org. v. District of Columbia*, 496 F.3d 1362, 1373 (Fed. Cir.

2007) (exclusive rights terminate with expiration of patent).  Thus, an alleged

assignment of an expired patent that does not include assignment of title cannot be "effective" because there are no "substantial rights" to assign.

This conclusion is consistent with this Court's precedent that all substantial rights are not conveyed where no exclusionary rights are transferred.[6] *Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1570 (Fed. Cir. 1994); *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1380 (Fed. Cir. 2000); *Rite-Hite*, 56 F.3d at 1552. In *Morrow*, for example, this Court held that plaintiff did not have standing because it did not have exclusionary rights to the patent. 499 F.3d at 1344. While the plaintiff in *Morrow* had many of the same rights Keranos alleges to have here, "the exclusionary rights have been separated from the right to sue for infringement." *Id.* at 1342. As a result, the plaintiff did not suffer the injury in fact that is required for constitutional standing. *Id.* (plaintiff "suffers no legal injury in fact to the patent's exclusionary rights").

The agreement between UMod and Keranos purports to retroactively transfer exclusionary rights. A26212 ¶2. But UMod cannot transfer that which it does not have. *Cf. Arachnid, Inc. v. Merit Indus.*, 939 F.2d 1574, 1579 (Fed. Cir.

---

[6]   This Court's recent decision in *Azure Networks* is not to the contrary. *See Azure Networks*, Slip op. No expired patents were at issue and exclusionary rights were transferred. *Id.* at 8-9.

***Confidential Material Subject to a Protective Order Has Been Redacted***

1991) (rejecting "'Back-to-the-Future' theory" that would have retroactively transferred legal title from one entity to another).  Once the patents expired, no exclusionary rights remained and none could be transferred to Keranos.  *See Biotechnology Indus.*, 496 F.3d at 1373.  Because *UMod* held the exclusionary rights at the time of the alleged infringement, *Keranos* suffered no injury in fact, and nothing short of title transfer can change that fact.  *See Mars*, 527 F.3d at 1371-72.

The district court distinguished *Crown Die* based on a single district court decision, *Valmet Paper Mach., Inc. v. Beloit Corp.*, 868 F. Supp. 1085 (W.D. Wis. 1994). A23312-14.  But *Valmet* addressed whether parties may transfer expired patents, which is not at issue here.  The *Valmet* plaintiff obtained title to the expired patent along with the right to sue.  868 F. Supp. at 1087-88.  Here, by contrast, ownership and the right to sue have been separated.  *See Crown Die*, 261 U.S. at 44 (suit cannot be sustained by non-owner).  And in any event, to the extent *Valmet* conflicts with *Crown Die* and *Mars*, the latter control.  Further, Keranos's contention that it holds "all substantial rights" to the patents is beside the point and wrong.  UMod held legal title at the time of infringement, holds legal title now, enjoys the right to royalties for past infringement, ███████████████████████████

████████████████████████.  A26214 ¶11.  Moreover, ████████████████

████████████████████████████████████████████████████

***Confidential Material Subject to a Protective Order Has Been Redacted***

███████████████████████████████████████████

████████████████████████. A26213 ¶2.  Accordingly, Keranos does not

possess the unencumbered legal title required by *Mars* and *Crown Die*.

Denying standing where legal title of expired patents and the right to sue for

past damages are separated prevents a patent owner like UMod from "stir[ring] up

litigation by third persons" "without expense to himself." *Crown Die*, 261 U.S. at

39.  By retaining legal title, patent owners can attempt to avoid tax liability that

accompanies the sale of an asset.  Meanwhile, the party obtaining the right to sue

claims to be the "effective owner" for standing purposes and can avoid tax liability

that accompanies receiving (for free) an allegedly valuable asset.  Keranos has

alleged the patents are worth at least $20 million (KBr. 49), ██████████████

████████████████████. A26214 ¶8.

In short, Keranos did not own the asserted patents at the time of the alleged

infringement.  Because Keranos lacks standing, this Court should vacate the

district court's finding of standing and direct the court to dismiss the complaint.

## II.   THE DISTRICT COURT PROPERLY DENIED KERANOS'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS.

Even if Keranos has standing, the district court exercised sound discretion in

denying Keranos's tardy attempt to add thousands of publicly available products

more than two years after filing its complaint.  Keranos did not have good cause to

amend because it did not act diligently to search for and name products in its initial contentions, even though those products were publicly available years before it filed suit.  Instead, Keranos considered such efforts "expensive and cumbersome" and shifted the burden of identifying these products onto Defendants.  A7-8, A12-13.  Indeed, Keranos admits that it "did not perform the type of search for which it has been found to lack diligence."  A6566-67.

> **A.    In The Eastern District Of Texas, Plaintiffs Must Diligently Analyze Publicly Available Information Before Serving Infringement Contentions And May Amend Those Contentions Only Upon A Showing Of Good Cause.**

In the Eastern District of Texas, plaintiffs are required to "rigorously analyze all publicly available information" before filing suit and to crystallize their infringement contentions early.  *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005); *see also O2 Micro*, 467 F.3d at 1365.  The contentions must contain specific information, including each patent claim allegedly infringed (P.R. 3-1(a)), each product accused of infringement (P.R. 3-1(b)), and a claim chart showing where each element is located in the accused product (P.R. 3-1(c)).  The plaintiff must identify accused products "as specific as possible" and "by name . . . or number, if known."  P.R. 3-1(b).

Once served, contentions are final unless the plaintiff obtains leave to amend "by order of the Court, which shall be entered only upon a showing of good

cause." P.R. 3-6(b). "'[G]ood cause' requires a showing of diligence." *O2 Micro*, 467 F.3d at 1366; *see also* A6 (citing *Alexsam Inc. v. IDT Corp.*, No. 2:07-cv-420-CE, 2011 WL 108725, at *1 (E.D. Tex. Jan. 12, 2011)). "The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." *O2 Micro*, 467 F.3d at 1366.

Eastern District of Texas courts have consistently interpreted their Patent Rules to require a plaintiff to establish that, despite diligent efforts, it could not have identified additional products in its initial contentions. *See, e.g.*, *SmartPhone Techs. LLC v. HTC Corp.*, No. 6:10cv580, 2012 WL 1424173, at *3 (E.D. Tex. Mar. 16, 2012); *Global Sessions LP v. Travelocity.com LP*, No. 6:10-cv-671, 2012 WL 1903903, at *4 (E.D. Tex. May 25, 2012).[7] This follows because the Patent Rules are "part of the Court's scheduling order" under Federal Rule of Civil Procedure 16, and the "good cause" requirement of Rule 16(b) requires a showing "that 'the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *STMicroelectronics*, 307 F. Supp. 2d at 849, 851 (quoting *S&W Enters. L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). To meet its burden to show "good cause," Keranos was obligated to show that *despite exercising diligence* it could not have identified the additional products

---

[7]     The lone case Keranos cites, *3Com Corp. v. D-Link Sys., Inc.*, No. C 03-2177, 2007 WL 949599 (N.D. Cal. 2007), is inapposite. KBr. 41. The *3Com* court's opinion does not mention the diligence requirement or examine whether 3Com was "diligent" in submitting amended contentions.

at the time it served its initial contentions "absent discovery." *See, e.g.*, *MediaTek, Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341, 2013 WL 588760, at *2 (N.D. Cal. Feb. 13, 2013) (emphasis added); *Infineon Techs. AG v. Volterra Semiconductor Corp.*, No. 11-6239, 2012 WL 6184394, at *3 (N.D. Cal. Dec. 11, 2012).

This Court has recognized the value of these rules in streamlining discovery. *See O2 Micro*, 467 F.3d at 1365. One purpose of discovery is to "allow the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendants' theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case." *Id.* Patent Rules facilitate that process "by requiring both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *Id.* at 1365-66.

## B.    The District Court's Finding That Keranos Lacked Diligence Is Amply Supported.

Keranos flouted its obligations under the Patent Rules. Instead of diligently searching for and specifically naming accused products, Keranos "disclosed only a few products in its original contentions, then demanded that Defendants identify the remaining products that incorporate the accused technology." A8. The district court's conclusion that Keranos "failed to demonstrate that it acted diligently," A7,

31

and its underlying fact findings represent a straightforward application of the Patent Rules, are supported by ample evidence, and are in many instances admitted by Keranos.

### 1.  Keranos Failed To Search Publicly Available Information And Instead Shifted The Burden To Defendants.

The district court found that Keranos "made virtually no effort to specifically identify the accused products as required by the local patent rules." A13; *see also* A7-8.  Keranos cannot dispute that finding because it expressly *admitted* that it "did not perform the type of search for which it has been found to lack diligence." A6566-67.  The evidence confirms that Keranos simply performed a pre-filing inquiry to identify a handful of products in its 2010 complaint, and then eighteen months later slavishly copied those products into its contentions. A2241; A6566-67.  Keranos's proposed amendment would have "add[ed] thousands of additional products not specifically disclosed in Plaintiff's original infringement contentions" based solely on information provided by Defendants under protest during discovery.  A5; *see also* A1151-88 (listing roughly 2,700 specific products).  Indeed, Keranos threatened to compel a response from any refusing Defendant.  A2235-36.  Keranos admits "[t]he primary purpose of the supplement is to identify additional Accused Products of which Keranos has become aware after service of its Infringement Contentions." A1149.  Keranos has never argued that it identified those products based on its own efforts.

Keranos's inaction is particularly indefensible because, as the district court found, Defendants "demonstrate[d] a number of means through which [Keranos] could have identified [these additional] products" before serving its initial contentions and Keranos failed to "mak[e] these efforts." A7-8. For instance, all of these products were publicly available sometime between 2004-2008, as Keranos admits. A1143 ¶7. In many cases, public documents that identified these additional products were in Keranos's possession when it served its contentions, including documents that state the products contain SuperFlash® technology. A1834 (Table B); A18982 (citing A20273-81)[8]; A1834 (Freescale); A18778-80 (citing A18809-905); A2243 (SST); A2348-50 (Epson); A26380-90 (Intel). Keranos's failure to review its own documents is inexplicable. *See, e.g.*, *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. C 08-04567, 2009 WL 3353306, at *2 (N.D. Cal. Oct. 16, 2009).

Further, Keranos failed to search for and identify additional products using the same criteria it used to list products in its complaint and initial contentions. As the district court found, "many of the products identified by Plaintiff in its original contentions were identified using the exact or similar documents that [Keranos] now claims are insufficient." A8. For Defendant Apple, Keranos identified a

---

[8]     Keranos sought to add only SST products to its amended allegations against IBM and Intel. A18955; A18778. Keranos similarly had documents in its possession identifying the SST products identified for IBM and Intel. A18596; A18778.

single iPod nano product in its complaint and contentions based on a "teardown" that is freely available on multiple websites. A16836-37 ("Citation" column for Apple). However, teardowns of many other Apple products Keranos belatedly sought to add were also publicly available on the internet and in books far before Keranos filed suit. A20968-69. Apple also demonstrated that the products themselves were available on eBay. A20969-70. Keranos similarly could have identified the products of other Defendants: Defendants submitted hundreds of publicly available data sheets and websites that show that Keranos could have identified the additional products it belatedly sought to add based on publicly available information. *See e.g.*, A16787-94 (citing, *e.g.*, A17281-96; A18270-72, A18322-24, A18368-69 (Freescale); A18668-75 (Microchip); A18541-44, A18534-37 (ADI); A18676-84 (NSC); A18685-92 (TI); A18693-710 (SST); A17312-35 (Epson)); A20967-71, A20982-87 (citing, *e.g.*, A20988-1013, A21028-35) (Apple); A18956 (IBM); A18778, A26380-90 (Intel).

Having failed to undertake its own search, Keranos improperly shifted the burden onto Defendants by demanding "that Defendants identify the allegedly offending products." A13; A7-8. Keranos admits that it made no effort to identify additional products because it would have been "expens[ive]" and "burdensome." A6115; A6377; A1142-43.

Moreover, Keranos's ability to locate additional products *after* serving its contentions shows it was not diligent *before* serving them. For example, NXP served a motion for sanctions based on Keranos's failure to identify a single NXP product that contained SuperFlash® memory. A2288-310. Keranos responded within weeks by identifying such a product. *Id.*; *see also* A2118-19, A2246. Keranos similarly emailed "supplemental" contentions that contained reverse engineering analyses for products not identified in its initial contentions. *E.g.*, A2092, A2175-81 ("April 19" supplements to '719 Patent claim 1 chart adding NXP's P89V51RD2FA product, NSC's COP8SBR9HV8A product, Samsung's S3F8278XZZ product, and Toshiba's TMP91FY42FG product). And when Freescale informed Keranos that some products had been incorrectly identified as containing SuperFlash® memory, it took Keranos just a few days to locate publicly available documents that indicated three of those products contained SuperFlash® memory. KBr. 48; A6594, A6566 (citing A6601-51). Had it been diligent, Keranos could have done all of this work prior to serving its contentions.

## 2.    Keranos Failed To Amend Promptly Even After Shifting The Burden To Defendants.

Keranos failed to demonstrate diligence for a second reason: it waited *four months* to seek leave to amend. By March 2012, Keranos possessed information—provided by Defendants—specifically identifying additional products for at least Defendants ADI (A2020), Apple (A21539), Intel (A2262-63), Microchip (A1951-

35

25, A1965-2011), NXP (A2246-47), and TSMC (A2030-31).[9]  Instead of promptly

moving to add these products, Keranos waited until July 20, 2012.  A132.  This

lengthy delay alone demonstrates that Keranos was not diligent.  As this Court has

held, a plaintiff's "[three month] delay in moving to amend its infringement

contentions and its lack of adequate explanation for this delay" are sufficient to

support a "finding [of] a lack of diligence and therefore a lack of 'good cause.'"

*O2 Micro*, 467 F.3d at 1367-68.

Keranos's only proffered excuse is that it was negotiating with *other*

Defendants.  KBr. 17.  But Keranos "cannot use the complexity of th[e] case as an

excuse for its lack of diligence."  *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-

cv144, 2009 WL 2590101, at *6 (E.D. Tex. Aug. 8, 2008); *see also O2 Micro*, 467

F.3d at 1367 ("[M]ere existence of good faith negotiations over a possible

stipulation was insufficient to excuse" delay.).  Keranos chose to sue dozens of

defendants in a single suit; it was required to exercise diligence in seeking to

promptly amend contentions for each defendant.

### C.    Keranos Identifies No Legitimate Reason To Disturb The District Court's Finding That It Lacked Diligence.

Keranos does not contest the court's lack of diligence finding by attacking

the Patent Rules.  Instead, it claims the district court abused its discretion in

---

[9]    Keranos incorrectly focuses on the date Apple provided its interrogatory response instead of the date when Apple provided Keranos with information identifying the SuperFlash® products. *Compare* KBr. 17, *with* A20971.

denying Keranos's motion for lack of diligence. Keranos's assertion thus runs into the teeth of this court's standard of review where the district court's discretion is at its apex. *See, e.g.*, *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005); *Genentech*, 289 F.3d at 768; *In re Adams*, 734 F.2d 1094, 1102 (5th Cir. 1984).

### 1.  Keranos's Pre-filing Efforts Were Inadequate.

Keranos contends that the district court "misconstrue[d]" its own rules in holding that Keranos was required to act diligently to specifically identify the products in its initial contentions. KBr. 31. That is wrong. Besides, the district court applied the rules consistent with Eastern District precedent. *See, e.g.*, A6261-68, *Levine v. Samsung Telecommunications Am., LLC*, No. 2:09-cv-372, at 2, 6-7 (E.D. Tex. July 27, 2012) (Schneider, J.) (denying leave where products publicly available). And district courts receive great deference "when interpreting and enforcing local rules so as not to frustrate local attempts to manage patent cases according to prescribed guidelines." *Genentech*, 289 F.3d at 774.

The district court correctly concluded that to establish "good cause" for leave to amend, a plaintiff must exercise diligence in searching for and identifying accused products in its initial contentions. A12. As discussed above, this is required because the Patent Rules incorporate the good cause requirement of Rule 16(b). *See supra*, Part II.A. Accordingly, it is Keranos's burden to show that

despite exercising diligence it could not have identified the additional products by the initial contention deadline. Keranos therefore cannot excuse its lack of diligence by focusing solely on Rule 3-1(b) and claiming that it only requires identification of accused products of "which it was aware" or to the extent "known." KBr. 2, 37-38, 40, 43.

Regardless, Keranos's assertion is immaterial because it did not identify all accused products "of which it was aware." Keranos possessed documents that identified many of the products that Keranos belatedly sought to add. *See, e.g.*, A3118-25, A6112-13 ("2007 SST Product Selection Guide" possessed by Keranos); A2243 (products of Defendants SST, Freescale, Epson, and TI); A22 (IBM).

Keranos's pre-filing efforts are likewise irrelevant and provide no evidence of efforts to identify the additional products Keranos later sought to add. KBr. 43-44. Keranos touts that it "spent hundreds of hours attempting to individually identify defendants' products" and "reversed [sic] engineered some products." *Id.* At most, these efforts refer to Keranos's attempt to identify the products it actually listed in its complaint and initial contentions. A1142-43. Keranos nowhere described in its short, two-page declaration any efforts taken to identify *each of the additional products* it sought to add by amendment. A1142-43 (referring generally to "searches"). Keranos essentially admits this: "During that [eighteen month

period between filing its complaint and serving its initial contentions], . . . Keranos did not perform the type of search for which it has been found to lack diligence." A6566-67.

Keranos's focus on deposition and expert discovery that Defendants provided is similarly irrelevant.[10]  KBr. 25-27, 39-40.  As this Court explained in *O2 Micro*, Defendants' conduct "provides no evidence of diligence" by Keranos and "does not explain what" Keranos "was actually doing" to identify the additional products.  467 F.3d at 1367.  This is particularly so here where all the conduct occurred after Keranos served its initial contentions.

Keranos's approach eviscerates the diligence requirement, subverts the purposes served by the Patent Rules, and invites open-ended fishing expeditions. A party alleging infringement could undertake virtually no effort to identify accused products, vaguely identify product categories in its contentions, and then force the Defendants to incur what Keranos conceded is a burdensome and expensive task of identifying all of the accused products that potentially fall within these categories.  Accused infringers would have no certainty as to the products accused of infringement save Rule 11, and the right to amend would become

---

[10]    Neither Defendants nor Defendants' expert "agreed that all SuperFlash memory cells" were manufactured and functioned in exactly the same way."  KBr. 1-2.   The protective order prevented each defendant from accessing another Defendants' confidential information.   A26538-39.   And Defendants' expert opined only that each of the various manufacturing processes and SST SuperFlash® products did not meet the same claim limitations.  A6549 n.1.

virtually unlimited because a patentee could later amend to add any specific product. Diligence to identify accused products would never be required. As this Court observed in *O2 Micro*, the rules should not be interpreted in a way that would render them "virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." 467 F.3d at 1366.

### 2. Keranos Made No Effort To Identify The Additional Products.

Keranos argues that it complied with Rule 3-1(b) despite its lack of diligence. KBr. 35-43. This makes no sense. Keranos admitted that it sought to add products that it never searched for, never identified in its initial contentions, and identified only "based principally on information included in discovery responses provided by Defendants." A1149. The fact that Keranos found it too "expensive and cumbersome" (A8) to do more is no excuse.

Keranos's complaint that *Defendants* did not specifically show that each product was publicly available ignores the burden of proof. The burden is on Keranos "to establish diligence rather than on [Defendants] to establish a lack of diligence." *O2 Micro*, 467 F.3d at 1366 (citing *Genentech*, 289 F.3d at 774). Keranos failed to carry its burden. The district court, therefore, properly excluded *all* of the products. *See, e.g.*, *STMicroelectronics*, 307 F. Supp. 2d at 850-51 (no diligence where STM did not explain "what diligence it used" or "why its diligence was not sufficient"); *Speedtrack, Inc. v. Endeca Techs., Inc.*, 524 F. App'x 651,

40

659 (Fed. Cir. 2013) (no diligence where plaintiff "waited six months to formally move to amend its infringement contentions to include, for the first time, a doctrine of equivalents argument") (unpublished); *Vemex Trading Corp. v. Tech. Ventures, Inc.*, 563 F. App'x 318, 327 (5th Cir. 2014) (per curium) (no diligence where party presented no information concerning what efforts, if any, it made to obtain evidence at issue) (unpublished).

> ### a.    Keranos Did Not Satisfy the Patent Rule Requirements By Generally referring To The SuperFlash® Mark Or Entire Product Families.

The district court correctly rejected Keranos's various assertions regarding naming products in its initial contentions because none are credible and none demonstrate diligence to identify the additional products.  KBr. 37-42, 48-49.

Keranos did not use public documents or reverse-engineering to "carefully" identify the accused products listed in its complaint.   KBr. 37-39, 43-45. Keranos's was accusations were over-inclusive.  For some Defendants, Keranos identified *no products* containing SuperFlash® memory (*e.g.*, NXP).  A2270.  For others, Keranos indiscriminately identified entire product families, which included products without SuperFlash® memory (*e.g.*, Freescale).  A6594.  And for others, Keranos identified some products using documents without any mention of SuperFlash® memory (*i.e.*, containing only general references to "flash" memory, "embedded flash memory," or "microcontrollers").  A1143 ¶5; A16788-94.

Keranos's complaint was also under-inclusive, as discussed above.  *See supra*, Part II.B.1.  Given all of the publicly available information in Keranos's possession, Keranos offers no plausible explanation for how it was able to identify the products in its initial contentions, but unable to do so for the products it sought to add.  *MediaTek, Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341, 2013 WL 2403644, at *5 (N.D. Cal. May 31, 2013).

Keranos's arguments regarding generic references to entire product families are no more appropriate than its general references to products containing SuperFlash® memory.  Keranos claims it made "enormous efforts to identify the accused products" (KBr. 42), but that refers only to the products it actually listed in its contentions, not the additional products it belatedly sought to add.  *See supra*, Part II.C.1.

Keranos's claim that it identified SST's products with the same specificity as SST is not credible.  KBr. 42.  Keranos admits that it identified only one "representative product number" and did not identify any SST product by product family or using an "xx" designation.  "Keranos did not separately include all the individual SST SuperFlash product names or families known to it at the time.  Instead, it included a representative product number."  KBr. 37-38 & n.8.  Keranos cannot attribute SST's "xx" product designation to other Defendants.  KBr. 42. How SST designates its products sheds no light on how product designations are

used by other Defendants or whether Keranos diligently identified the products of other Defendants.

Moreover, Keranos's assertion that the Patent Rules permit categorical identifications has been frequently rejected. *Oracle Am. Inc. v. Google Inc.*, No. C 10-03561, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011) ("mobile devices running Android" insufficient); *Vigilos LLC v. Sling Media Inc.*, No. C-11-04117, 2012 WL 9973147, at *3 (N.D. Cal. July 12, 2012) (identification of accused functionality and exemplar products insufficient); *Asus Computer Int'l v. Round Rock Research, LLC*, No 12-cv-02099, 2014 WL 1463609, at *6 (N.D. Cal. April 11, 2014) ("products 'that include DDR3 SDRAM memory'" insufficient); *MediaTek*, 2013 WL 588760, at *1 (Freescale products that contain specifically identified feature insufficient). Indeed, Patent Rule 3-1(b) requires each "Accused Instrumentality" to be identified "as specific[ally] as possible" and "by name or model number, if known." P.R. 3-1(b). "The Patent Local Rules require[] *specific* identification of particular accused products. . . . Representative examples may be a useful tool for proving an infringement case at trial, but a full list of accused products must be disclosed as part of a party's infringement contentions." *Oracle*, 2011 WL 4479305, at *2; *see also Infineon Techs.*, 2012 WL 6184394, at *3. Keranos's proposed rule—that courts must accept product-family identifications as

a matter of law—would severely restrict the district courts' ability to manage their cases.

Courts have rejected Keranos's categorical approach because Patent Rules put the burden on the plaintiff to identify accused products as specifically as possible. *Oracle*, 2011 WL 4479305, at *2; *MediaTek*, 2013 WL 588760, at *2. Forcing Defendants to identify specific products "eviscerates the goal of the Patent Local Rules to streamline discovery by requiring the party claiming infringement to identify with particularity how each accused product infringes" and "would also render meaningless the requirement of Patent Local Rule 3-6 that a party show 'good cause' before being allowed to amend its [contentions] to include additional products." *MediaTek*, 2013 WL 588760, at *2.

This rationale particularly applies here. The district court found that Keranos improperly shifted the burden to Defendants to identify the accused products. A7-8, A13. But it did not go so far as to "foreclose" any "categorical" references. A13. It merely ruled that Keranos did not comply with the Patent Rules by disclosing entire product families where it failed to act diligently and made "no attempt to narrow the accused product descriptions." *Id.* That is a sensible ruling and well within the district court's discretion.

> **b.    Keranos's Lack Of Diligence Is Not Excused Because The Products Were Sold Years Before Keranos Filed This Lawsuit.**

The court was justified in finding "unavailing" Keranos's after-the-fact assertion that it could not identify the additional products because it "could not categorically confirm" they were available between 2004 and 2008.  A8; KBr. 48-49.  "Confirming" infringement contentions "is a task left to discovery, while the preparation and supplementation of infringement contentions is a matter of pleading" to "provide adequate notice and streamline discovery."  *Realtime Data*, 2009 WL 2590101, at *5 (E.D. Tex. 2009).

Keranos did not show that it actually searched for information about when specific products were available.  Keranos merely speculates that the 2004-2008 timeframe "presented difficult issues in confirming the presence of Superflash®."  A1143.  Further, Keranos's initial contentions did not mention the need for information about 2004-2008 product availability.  A1844-68; *see, e.g.*, *MediaTek*, 2013 WL 2403644, at *5.  Instead, Keranos admittedly identified products, including the SST89F58 product, without information that the product was available between 2004-2008 (KBr. 48), and omitted other products despite possessing documents specifically indicating their availability in 2004-2008.  *E.g.*, A3118-25 (SST 2007 Product Selection Guide).

Tellingly, Keranos did not mention the need for 2004-2008 availability in its initial motion to amend. A1125-38. Keranos only asserted that "[s]hort of reverse engineering, the only publicly-available method for identifying specific products is to locate a publication wherein a disclosure is made that the product is using 'SuperFlash®.'" A1133; *see also* A1142 ¶¶2-3. Only *after* Defendants discredited this argument did Keranos change its story to claim that information about product availability was needed. A5778-79.

Before the district court, Keranos also argued that it could not identify products without evidence that the product was actually "sold or imported" into the U.S. A5778. Keranos does not make that argument here and it is now waived. *See Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990). It also fails because (i) Keranos's initial contentions actually identify products that were never sold in the U.S., (ii) Keranos raised this argument for the first time in its reply, and (iii) Keranos never provided evidence that each product it identified was "sold or imported" into the U.S.

### c. Keranos Did Not Comply With The Rules By Providing An Infringement Theory.

Keranos's argument that it provided adequate notice of its infringement theory is unavailing. KBr. 37-39. Patent Rule 3-1 has multiple subparts, each requiring separate disclosures. *See* P.R. 3-1(a)-(f). Rule 3-1(b) is at issue in this appeal and requires each "Accused Instrumentality" to be identified "as specific as

possible" and by "name or model number, if known." P.R. 3-1(b). Rule 3-1(c) relates to a plaintiff's "infringement theory" by requiring "[a] chart identifying specifically where each element of each asserted claim is found" within each accused instrumentality. P.R. 3-1(c). If complying with Rule 3-1(c) alone sufficed, Rule 3-1(b) would be improperly rendered meaningless.[11] *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009); *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 399-400 (5th Cir. 2014).

Contrary to Keranos's assertions (KBr. 39), there is good reason for the specificity requirement of Rule 3-1(b). Eastern District courts have explained that "[t]he Patent Rules require parties to evaluate their infringement contentions early in litigation, so 'the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for *Markman*, summary judgment, trial and beyond.'" *Linex Techs.*, 628 F. Supp. 2d at 707 (quoting *Connectel*, 391 F. Supp. 2d at 527). Specific identification of each accused product (P.R. 3-1(b)), in addition to identifying the specific theory of infringement (P.R. 3-1(c)), helps streamline discovery and narrow issues for summary judgment and trial with respect to a party's infringement claims.

---

[11] Although not an appeal issue, Keranos did not comply with Rule 3-1(c). Keranos provided no chart that reads each asserted claim on each accused product. It provided a chart that generally shows three different "standards" for SuperFlash® memory and how some claim elements purportedly read on a small handful of products . *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 707 (E.D. Tex. 2008); *Global Sessions*, 2012 WL 1903903, at *7.

Here, identifying specific products instead of a general theory would have substantially narrowed Keranos's infringement contentions. For instance, the '009 Patent claims a method of programming that includes "applying a programming voltage" and "ensuring" steps. A303. Defendants have contended they do not perform the "applying a programming voltage" step and that this step is not performed by the entity alleged to perform the "ensuring" step. *See Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1330 (Fed. Cir. 2008). By specifically identifying each accused product, Keranos would have narrowed its contentions as to how the programming voltage is applied, and who allegedly applies that voltage. *See, e.g.*, *Vigilos*, 2012 WL 9973147, at *3 (contentions insufficient where method claim asserted and Defendants are differently situated).

Keranos further alleged that each Defendant infringed both directly under § 271(a) and indirectly under § 271(b), (c). A1844-64. These claims all require proof of specific activities within the U.S. that constitute a direct infringement. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, No. 2013-1472, 2014 WL 5352367, at *11 (Fed. Cir. Oct. 22, 2014). The indirect infringement claims also require proof of additional conduct, such as specific intent to cause infringement or providing a particular component of an infringing product or process. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014). But depending on the Defendant and the particular product, much activity occurred outside the U.S. For

***Confidential Material Subject to a Protective Order Has Been Redacted***

instance, ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████. By specifically identifying each accused

product, Keranos would have narrowed its contentions as to what activity of each

Defendant could serve as the basis for direct and indirect infringement. This also

would have permitted Defendants to evaluate whether third-party discovery,

including outside the U.S., was needed.

Finally, specific identification of each accused product would have narrowed

Keranos's damages allegations. SuperFlash® memory can be incorporated into

increasingly larger products. KBr. 10. The accused product therefore matters a

great deal for considerations such as the entire market value rule or to ensure that

Keranos does not recover twice for the same allegedly infringing activity. *See,*

*e.g.*, *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006). It also

would have aided each Defendants' evaluation of any potential damages exposure

to inform early decisions relating to settlement.

By failing to exercise diligence to specify each accused product, Keranos

flipped the burden onto each Defendant and in so doing hid information that would

have streamlined discovery by narrowing Defendants' understanding of Keranos's

claims. As this district court held, "[t]his is contrary to Plaintiff's responsibility

under the local patent rules." A8.

### D.     Keranos's Lack of Diligence Applies To All Defendants And Excluded Products, Including Samsung, TSMC, ADI, Freescale, And Microchip.

Keranos makes several unpersuasive arguments that are specific to particular Defendants.  KBr. 45-48.  The district court justifiably concluded that Keranos failed to carry its burden of showing diligence.  A7-8, A12-13.  This alone dooms all of Keranos's defendant-specific arguments.  They are also erroneous for other reasons addressed below.

### 1.     Samsung.

Keranos's contentions regarding Samsung are fundamentally flawed because Keranos made no effort to identify individual accused Samsung products in its initial contentions.  A12-13; A15624 & n.3.  Keranos identified accused Samsung products only by general reference to product families.  A22898, A1182-83.  Nor were Keranos's proposed amended contentions any better.  Two years after Keranos filed its 2010 Complaint, Keranos still (with one *de minimis* exception) identified Samsung accused products by family and not by individual product models.[12]  A1183.

---

[12]     Like it contends for SST (KBr. 42-43), Keranos cannot establish its diligence through claims that Samsung itself identified products by family name. At the time, Samsung was working to identify the individual products at issue and ultimately did provide an individual product listing.  A15624 n.3.  As discussed above (*see supra*, p. 39), Samsung's post-contention conduct "provides no evidence of diligence" by Keranos and does not excuse Keranos's failure to exercise diligence to search for and identify specific accused products.

Keranos cannot excuse its lack of diligence by claiming there is "no evidence Keranos could have discovered specific Samsung product names." KBr. 45. This argument improperly shifts the burden onto Defendants to show Keranos lacked diligence. It is also mistaken. Keranos actually identified a specific Samsung product, an S3F8278XZZ microcontroller, less than four months after serving its contentions. A2179; A2092.

Samsung's opposition or non-opposition is also immaterial to Keranos's lack of diligence. KBr. 46. After initially arguing that the district court's order should not apply to Samsung products (A6567), Keranos later urged just the opposite (A15624 n.3). Keranos's about-face appears to have been a strategic decision aimed at setting the case up for appeal. The Samsung products were excluded as a result of Keranos's own urging—Keranos should not now be heard to complain.

Moreover, the Local Rule does not mandate—or even suggest—that the court is required to grant an unopposed motion. E.D. Tex. L. Civ. R. 7(d). Courts have the power to, and often do, deny unopposed motions. *See Veillon v. Exploration Servs., Inc.*, 876 F.2d 1197, 1200 (5th Cir. 1989); *United States v. Campbell*, 711 F.2d 159, 160 (11th Cir. 1983) (per curiam). Keranos's motion was opposed by many Defendants, and the court denied the motion in its entirety. A8. Samsung was not required to duplicate the efforts of others.

### 2. TSMC.

Keranos has never argued that it made any effort, much less a diligent effort, to identify additional TSMC products. As Keranos admits, it just generally referred to the trade name "EMBFLASH." KBr. 46. That alone confirms its lack of diligence.

Keranos contends that it "could not have found" TSMC's internal product numbers. KBr. 46. In fact, all of the products TSMC made were publicly available by 2008. Even Keranos's principal knew that TSMC is a foundry that made SuperFlash® memory products for customers. A26127-28, A26066-69. Indeed, specific products TSMC made for customers could have been identified from documents in Keranos's possession and basic internet searches. A2124; A15596-619. The fact that Keranos could not have identified TSMC's products by TMSC's own *internal* product number does not show that Keranos tried but failed to do so, or that TSMC's products could not have been identified by their publicly known product names.

Keranos also failed to exercise diligence in naming specific TSMC products in its amended contentions after TSMC provided this information. Instead of promptly moving to amend, Keranos inexcusably waited four months to seek leave. *O2 Micro*, 467 F.3d at 1366-67.

### 3.    Microchip, ADI, TI, And Freescale.

Keranos repeats the unsupported refrain that Microchip, ADI, Freescale and TI "merely identified their semiconductor devices" as including "flash memory," not SuperFlash® memory.  KBr. 47-48.  As discussed above, the district court correctly rejected Keranos's assertion that it identified only products containing SuperFlash® memory.  Keranos identified products based on documents that referred generally to "flash" memory, "embedded flash memory," or "microcontrollers" with no mention of SuperFlash® memory.  A1143 ¶5; A16788-94; KBr. 45.  Keranos could have identified the additional products it later sought to add on the same basis.

### E.    The Other Factors Do Not Excuse Keranos's Lack of Diligence.

Lack of diligence alone suffices to deny Keranos's attempt to add thousands of additional products to this case years after filing suit.  *See O2 Micro*, 467 F.3d at 1368.  There is no need to consider the prejudice, continuance, and importance factors.

Nor do these "other factors" legally outweigh Keranos's wholesale lack of diligence.  KBr. 50-52.  Defendants suffered significant prejudice.  Defendants incurred the great burden and expense of trying to search for and identify *every* product containing SuperFlash® memory dating back seven years or more.

Defendants should not have had to bear that burden because the Patent Rules place it squarely on Keranos, not Defendants. *O2 Micro*, 467 F.3d at 1366.

Defendants suffered further prejudice from Keranos's insistence on greatly expanded discovery that included products Keranos had not identified in its contentions. Keranos's initial contentions identified a handful of products that employed only one of three different generations of SuperFlash® memory. A15584-85. Defendants prepared for discovery based on the products Keranos actually identified in its contentions. A2088; A20971. But instead, Keranos insisted on discovery covering every product containing SuperFlash® memory of each Defendant. A2235-36. This expanded discovery to encompass thousands of unidentified products, and the production of process flows and information relating to multiple generations of SuperFlash® memory. As Keranos's infringement charts demonstrate, the process of making SuperFlash® memory differs for each generation. A1131 (Figure 2). Defendants would not have incurred the burden of this expanded discovery if Keranos had confined discovery to the products it had identified. And Defendants would suffer even more prejudice if they now had to prepare for a trial on thousands of unidentified products.

Defendants' substantive case preparation efforts were also impaired. Keranos waited to add these products until after Defendants served their invalidity contentions and proposed claim constructions. A1829. Defendants were thus

54

prevented from considering the entire universe of accused products when formulating those positions. Understanding the full scope of accused products could have changed Defendants' invalidity contentions, the prior art relied on, and/or the claim constructions Defendants proposed. For example, Defendants may have requested that the court construe the "applying a programming voltage" element of the '009 Patent. *See* A6256-58, *Orion IP, LLC v. Staples, Inc.*, No. 2:04-cv-297 (E.D. Tex. July 7, 2005) (Davis, J.) (denying amendment to contentions where defendants already provided invalidity contentions, proposed claim constructions, and joint claim construction statement).

Incredibly, Keranos characterizes the increased discovery costs it imposed on Defendants as a harm *to Keranos*. KBr. 36-37, 63. Keranos's suggestion that no prejudice occurred because Defendants already incurred the expense of discovery on all products is preposterous. KBr. 36-37. This is also true for the costs and expenses about which Keranos complains. KBr. 63. The fact that Defendants have already incurred this burden confirms Defendants were prejudiced, not the opposite.

Nor can Keranos blame the court for the discovery costs it incurred. KBr. 63. Keranos could have easily avoided or mitigated any increased discovery costs by confining discovery to the products it properly identified in its contentions. A2088; A20971. Keranos could have also sought relief from the district court,

***Confidential Material Subject to a Protective Order Has Been Redacted***

such as by seeking a stay of discovery pending the court's ruling or by petitioning for mandamus relief. *Cf. In re Apple Inc.*, 456 F. App'x 907, 908 (Fed. Cir. 2012) (non-precedential); *In re VTech Commc'ns, Inc.*, Misc. No. 909, 2010 WL 46332, at *2 (Fed. Cir. Jan. 6, 2010) (non-precedential). Despite filing multiple "emergency" motions with the court (A46, A62), Keranos never raised any concern about its pending motion or mounting discovery costs.

The importance factor is at most neutral and certainly does not outweigh Keranos's lack of diligence. Keranos can hardly claim that the additional products were "critically important" when Keranos itself considered it too burdensome and expensive to search for those products. The relative importance of these products "should have generated a commensurate amount of diligence." *Global Sessions* 2012 WL 1903903, at *6. Yet, Keranos chose to do nothing.

Keranos also understates the significance of the products it *voluntarily* dismissed. KBr. 49-50. After the district court's order, Keranos could have adjudicated claims against products of at least nine Defendants: SST, IBM, TI, Microchip, ADI, Apple, NXP, Samsung, and Intel. A15, A19-20. These identified products accounted for more than $███████ in sales. Instead of proceeding to trial, Keranos made the strategic decision to abandon those claims and appeal, or seek "clarification" for the purpose of excluding products (Samsung's) from the case. Having voluntarily extinguished such substantial claims, Keranos cannot

56

now complain that the district court failed to appreciate the relative importance of products Keranos never bothered to search for in the first place.

## III.  THE DISTRICT COURT IMPOSED NO SANCTION ON KERANOS.

Local Patent Rules require district courts to deny leave to amend infringement contentions where a plaintiff fails to show that it acted diligently to comply with the deadlines of the rules.  *See O2 Micro*, 467 F.3d at 1366-67; *cf. Geiserman v. MacDonald*, 893 F.2d 787, 791-92 (5th Cir. 1990) (excluding expert witness testimony where explanation offered for delay was unsatisfactory). Denying a motion for leave to add products in these circumstances is routine.  *See, e.g.*, *SmartPhone,* 2012 WL 1424173, at *3; *Global Sessions*, 2012 WL 1903903, at *3-5; *Acer, Inc. v. Tech. Properties Ltd.*, No. 5:08-cv-877, 2010 WL 3618687, at *1, 4-5 (N.D. Cal. Sept. 10, 2010); *MediaTek*, 2013 WL 2403644, at *3-6; *Monolithic Power Sys.*, 2009 WL 3353306, at *2.

Keranos now labels the district court's denial of its motion a "sanction;" however, the court did not invoke its sanction authority, or sanction Keranos.  It is not a sanction to deny a party's motion for leave to amend when the requirements for obtaining leave to amend ("good cause") have not been met.  This Court has held that denial of leave is entirely appropriate in this circumstance.  *O2 Micro*, 467 F.3d at 1369.

57

This Court has also rejected Keranos's assertion that denying a motion to amend for failing to act diligently is inconsistent with the Federal Rules. *See id.* at 1366. In *O2 Micro*, plaintiff claimed that "'good cause' must exist for amending its infringement contentions, without regard to its diligence in doing so, merely because new evidence was revealed in discovery." This Court disagreed, holding that "local rules requiring the early disclosure of . . . contentions and requiring amendments to contentions to be filed with diligence" are not inconsistent with the Federal Rules. *Id.* "If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." *Id.*

The district court's denial of leave to amend is certainly not a "Death Penalty Sanction," as Keranos argues. KBr. 53. As noted above, Keranos's initial contentions identified accused products with substantial sales revenue, all of which were left undisturbed by the district court's order. Keranos elected to dismiss those claims with prejudice. *See supra*, pp. 18-19, 56-57. If there was a death penalty, Keranos imposed the penalty on itself. *See O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 449 F. App'x 923 (Fed. Cir. 2011) (not a dismissal sanction where claims remained for adjudication); *CQ, Inc. v. TXU Mining Co.*, 565 F.3d

268, 280 n.7 (5th Cir. 2009) (not a dismissal sanction where claims seeking $110,419.17 remained).

Moreover, the sanction cases Keranos relies on are not applicable here. Most involve sanctions under Rules 16(f), 26(f), or 37(b).  KBr. 54-58, 61-62. None characterize a court's denial of a motion for failure to show good cause as a sanction, and none hold that evidence should be admitted despite lack of diligence. In *Alexsam* (KBr. 61), the plaintiff could not have diligently searched for information to include in its infringement contentions by the deadline.  KBr. 61. The court allowed an amendment "based on information not produced until after the deadline set by the Court[]" that "neither party could have met the deadline imposed by the Court." *Alexsam*, 2011 WL 108725, *2.

In *Oracle* (KBr. 62), the court excluded the accused products because they "were not among the products specifically identified" in Oracle's contentions. 2011 WL 4479305, at *2-3.  This Court's recent decision in *AntiCancer, Inc. v. Pfizer, Inc.*, 769 F.3d 1323 (Fed. Cir. 2014), is also inapposite.  Diligence and good cause were not at issue.  The district court had invoked its inherent power to sanction by requiring the plaintiff to pay defendant's fees if it wanted to amend its contentions.  *Id.* at 1327, 1329.  More importantly, the question is not whether the court had discretion to interpret the Patent Rules a different way, but rather

whether any of these cases required the court to permit amendment despite Keranos's lack of diligence. None do.

Finally, Keranos's assertions that it "earnestly believed" it was complying with or "misunderstood" the rules are no substitute for good cause and do not transform the court's order into a sanction. KBr. 59, 61. "Nobody even vaguely familiar with discovery rulings" of the Eastern District of Texas "could have any thought that this court is going to allow a party to ambush an opponent by" withholding a substantial majority of the accused products from its contentions. *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 824-25 (E.D. Tex. 2007). This is especially so for Keranos, who was represented by experienced patent counsel, knowledgeable local counsel, and whose sole principal is a patent lawyer with more than twenty years of experience. A26126.

*****

Keranos waited until many years after the patents expired to file a single law suit against 49 defendants, identified a "handful" of products, decided not to search for additional publicly available products because the effort was too "cumbersome and expensive," flipped that burden onto Defendants, and then waited four more months to amend after receiving the product information from Defendants. Keranos has no one to blame but itself for that lack of diligence. The district court exercised sound discretion in reaching that conclusion.

## CONCLUSION

This Court should affirm the denial of Keranos's request for leave to amend its infringement contentions. Alternatively, this Court should direct the district court to dismiss the case because Keranos lacks standing.

Dated: November 26, 2014                  Respectfully submitted,

 /s/ Jeffrey D. Mills
Jeffrey D. Mills*
  *Counsel of Record*
Bruce W. Slayden II
Brian C. Banner
KING & SPALDING LLP
401 Congress Ave., Suite 3200
Austin, TX   78701
Telephone: (512) 457-2027
Facsimile: (512) 457-2100
jmills@kslaw.com
bbanner@kslaw.com
bslayden@kslaw.com

Adam M. Conrad
KING & SPALDING LLP
100 N. Tryon St., Ste. 3900
Charlotte, NC  28202
Telephone:  (704) 503-2600
Facsimile:  (704) 503-2622
aconrad@kslaw.com

*Counsel for Defendants-Appellees Silicon Storage Technology, Inc., Microchip Technology Inc., Freescale Semiconductor, Inc., Samsung Semiconductor, Inc., Samsung Electronics Co. Ltd., Taiwan Semiconductor Manufacturing Co., Ltd., TSMC North America, Analog Devices, Inc.,*

*International Business Machines Corporation, Intel Corporation, National Semiconductor Corporation, NXP Semiconductors USA, Inc., and Texas Instruments, Inc.*

*Counsel has consent of Appellee Apple Inc. to file the foregoing document.

John R. Lane
  *Counsel of Record*
FISH & RICHARDSON P.C.
1221 McKinney St., Suite 2800
Houston, TX  77010
Telephone: (713) 654-5300
Facsimile: (713) 652-0109
jlane@fr.com

*Counsel for Defendant-Appellee Apple Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that the foregoing brief, exclusive of the exempted portions as provided in Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b), contains 13,078 words and therefore complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(A)(i).

DATED: November 26, 2014

 /s/ Jeffrey D. Mills
Jeffrey D. Mills

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Fed. R. App. P. 25 and Fed. Cir. R. 25, this is to certify that I have this day served the foregoing Brief of Appellees via the Court's CM/ECF on all counsel of record.

DATED: November 26, 2014

      /s/ Jeffrey D. Mills

Jeffrey D. Mills

**ADDENDUM**

# Federal Rule of Civil Procedure 16(b)
## Pretrial Conferences; Scheduling; Management

\* \* \*

(b) SCHEDULING.

(1) *Scheduling Order.* Except in categories of actions exempted by local rule, the district judge—or a magistrate judge when authorized by local rule—must issue a scheduling order:

(A) after receiving the parties' report under Rule 26(f); or

(B) after consulting with the parties' attorneys and any unrepresented parties at a scheduling conference or by telephone, mail, or other means.

(2) *Time to Issue.* The judge must issue the scheduling order as soon as practicable, but in any event within the earlier of 120 days after any defendant has been served with the complaint or 90 days after any defendant has appeared.

(3) *Contents of the Order.*

(A) *Required Contents.* The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.

(B) *Permitted Contents.* The scheduling order may:

(i) modify the timing of disclosures under Rules 26(a) and 26(e)(1);

(ii) modify the extent of discovery;

(iii) provide for disclosure or discovery of electronically stored information;

(iv) include any agreements the parties reach for asserting claims of privilege or of protection as trial-preparation material after information is produced;

(v) set dates for pretrial conferences and for trial; and

(vi) include other appropriate matters.

(4) *Modifying a Schedule.* A schedule may be modified only for good cause and with the judge's consent.

\* \* \* \*